SEGUR *vs.* PELLERIN.

SEGUR
*vs.*
PELLERIN.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF ST. MARY.

Suits for the interdiction of idiots, or insane persons, must be brought in the
Probate Court, and all the proceedings had there. The *Parish Court*,
although it be the same judge, is without jurisdiction, *ratione materiæ*, to
try such cases.

It is necessary that the parish judge should designate in all his proceedings
the capacity in which he acts; and the proceedings of the Probate Court
must be conducted and kept distinct from those of the Parish Court.

In a suit for interdiction, service of petition and citation, must be made on
the person sought to be interdicted, in the same manner as in other cases.
It is not sufficient for the attorney appointed to defend him, to accept ser-
vice.

A judgment of interdiction, rendered on *ex parte* testimony, is erroneous, and
will be reversed on appeal.

The law requires that the person intended to be interdicted should be noti-
fied of the suit, and have the opportunity to employ his own counsel, before
any is appointed by the judge.

This is a suit for the interdiction of the defendant, who is
alleged to be subject to a habitual state of madness or insani-
ty, from his childhood, and rendered incapable of taking care
of his person, or of administering his estate, which should be
administered by a curator after interdiction.    That he is a
joint heir with his sister, wife of Martial Sorel, of his father
and mother both deceased, inheriting a large property, con-
sisting of lands, sugar plantation and slaves ; situated in the
Parish of St. Mary, and by reason of his well known imbecili-
ty, is wholly incapable of taking care of it.    The petitioner,
prays the court to summon physicians, and other skillful per-
sons, well acquainted with the said Charles Frederick Pele-
rin, to be interrogated, and to establish his insanity, and that
counsel, learned in the law, be also appointed to represent him,
and after hearing counsel, and full proof being made, that
judgment of interdiction be pronounced.

William C. Dwight, Esq., was appointed attorney and

counsellor, to represent the defendant ; who accepted service of the petition.

The attorney then pleaded a general denial ; and that the plaintiff be held to strict proof. That allowing what is alleged to be true, it does not follow that judgment of interdiction ought to be pronounced in this case ; and that if more good would result from a contrary course, the defendant should be let alone. He prays for general relief.

The petition and answer, are marked "filed," by the parish judge.

The parties proceeded to take testimony in this case, in the office of the parish judge.

It was clearly shown, that the defendant was born an idiot, and subject to epileptic fits. He is totally incapable of taking care of his person, or to take care and administer his property ; and is also destitute of the faculty of speech, constantly requiring to be attended by a nurse, and cannot even change his clothes, or feed himself.

From the evidence, the judge was satisfied of the idiocy, mental alienation, and bodily infirmities of the defendant, so as to require his interdiction. Judgment of interdiction was accordingly rendered.

The plaintiff then presented his petition, representing that the defendant was a resident and owner of large property in the parish of St. Mary, and that it was necessary that a curator be appointed to take care of his person and property, during the pendency of the suit for interdiction. He prays, that a family council be convoked, to deliberate touching the interests of said defendant, and that by the consent and advice, of said family meeting, some suitable person be appointed curator to his person and estate, and authorized to appear for and defend him in all suits at law now pending, in which his interests are involved ; and to institute all suits necessary to protect and secure his property ; and, that said curator have charge of his person and estate, and represent him in all civil acts.

The defendant, by his counsel, prayed and obtained an appeal from the judgment of interdiction.

Pending the appeal, C. Olivier, senr., was appointed administrator, *pro tempore*, of the defendant's property ; and the plaintiff appointed to take care of his person.

*Gibbons,* for the plaintiff, submitted the case, urging the affirmance of the judgment.

*Dwight,* for the defendant, urged various objections to the proceedings and judgment, and that it should be reversed.

*Garland, J.,* delivered the opinion of the court.

The plaintiff, in a petition addressed " to the honorable the judge of the parish of St. Mary and State of Louisiana," states, that he is a relative of Charles Frederick Pelerin, who is subject to a habitual state of madness or insanity, and has been so from childhood to the present time, which is notorious and visible to all who see or converse with him. That the said Charles is now arrived at the age of majority, and is utterly incapable of administering his property or taking care of his person. That he is a joint heir with his sister, to a large estate in the aforesaid parish, consisting of land, slaves, and moveable property, of great value. The plantiff, therefore, prays that counsel may be appointed to represent and defend said Charles Frederick ; that physicians, and other competent persons, who know the said Charles, may be cited and examined to establish the habitual insanity ; that a judgment of interdiction be pronounced against him, and he declared incapable of taking charge of his person, or administering his estate.

After the filing of this petition, with " Edward Pecat, clerk," but of what court, he does not inform us ; the *parish judge* appointed counsel to represent the said Charles F. Pellerin, who accepted service of the petition, " to have the same effect and force, as if served on me, by the sheriff or coroner." A few days after this acceptance, the attorney filed with the *parish judge,* an application to delay his decision for two weeks, and that time be given him to answer. This paper states the case, as pending in the Court of Probates. What

order was made on it, the record does not show ; but it is probable the delay was granted, as fifteen days after, to wit, on the 18th of April, 1840, the aforesaid attorney filed, with the *parish judge*, an answer to the petition, and in it he says, the suit is in the *Parish Court*. On the same day the Court of Probates proceeded to try the cause, but took the testimony " in office, by the parish judge, of the parish of St. Mary," as appears. The counsel for the appellant states, that the cause was tried in open court, the witnesses came before it and testified ; but he says, he never, as the attorney of defendant, saw the affidavits taken by the judge, " in his office," until he saw them in the record, and never consented to receive any affidavit in the case. He further states, that the affidavits state correctly the testimony as given, as nearly as he can now recollect it. How the facts are, we can only judge from the record, and this appears not very regular ; but there are more important points on which the case must be decided. On the 23d of April, 1840, the Court of Probates decided the cause, and gave a judgment of interdiction against the defendant, from which he appealed. On the evidence, as it appears in the record, we are not prepared to say the judge erred.     -

But the questions involved in this case are not trivial. The proposition is to deprive a human being, under the protection of the law, of the administration of his property, and to place his person under the control of another, on the ground that he is incapable of administering the one, or taking care of the other. In the present case, it may be, the insanity is so notorious and clear, as to seem a justification for disregarding the ordinary forms of the law, in having it declared ; but, we must remember, that rules established in this case may, in a short time, be brought to operate in one more questionable, and great injury may be done, by sanctioning a disregard or omission of the provisions of the law.

The Probate Court is the proper tribunal to institute actions for the interdiction of insane persons. *Louisiana Code, article 385; Code of Practice, article 924; 5 Martin, N. S.*, 136. The petition is addressed to the parish judge, without designating

what court he presides over. It is left doubtful, and even the parties and judge afterwards seemed in doubt, as to the tribunal in which the suit was pending. Sometimes it was in the Parish Court, and then in the Court of Probates; we cannot very well understand which tribunal the plaintiff intended to select. The parish judge is properly the presiding officer of the Parish Court, and ex-officio judge of the Court of Probates; and if we were to draw an inference, from the manner he is addressed in the petition, it would be in favor of the supposition, that his authority was invoked in the former capacity. If so, the court was without jurisdiction, *ratione materiæ*, and the suit must be dismissed. The parish judge exercises different and important powers under our law, and it is very desirable that it should be known in what capacity they are called to act, as well as that in which they do act.

By an act of the legislature, passed in 1836, the clerks of the District Courts, in the fifth judicial district, are ex-officio clerks of the Courts of Probate, in their respective parishes, and are properly the keepers of the records of these courts; yet it seems the application for time to answer, made by the counsel for the defendant, and the answer when presented, were filed by the parish judge, and it is fair to presume, he filed them in the office over which he had control. If an answer should be presented to a district judge, and endorsed as filed by him, no one would suppose *that* a filing with the clerk. We will not say that this irregularity is sufficient to vitiate the proceedings in this case, as there is another more formidable.

By reference to the record it is evident, that the party sought to be interdicted was never notified of this suit; no citation, or copy of the petition was ever served on him, and he never authorized the attorney to accept a service for him. It may be said, there is no use in serving a copy of the petition on the defendant, as he is insane; but that is assuming as a fact, the issue that is to be tried, which the law does not permit a judge to decide, except upon the clearest evidence. Perhaps in this case no good might result from a notification of the proceedings, but in some other it might be of the

WESTERN DIST.
*September*, 1840.

SEGUR
*vs.*
PELLERIN.

Suits for the interdiction of idiots, or insane persons, must be brought in the *Probate Court*, and all the proceedings had there. The *Parish Court*, although it be the same judge, is without jurisdiction, *ratione materiæ*, to try such cases.

It is necessary that the parish judge should designate, in all his proceedings, the capacity in which he acts; and the proceedings of the Probate court must be conducted and kept distinct from those of the Parish Court.

In a suit for interdiction, service of petition and citation must be made on the person sought to be interdicted, in the same manner, as in other cases. It is not sufficient for the attorney appointed to defend him, to accept service.

WESTERN DIST.
September, 1840.

SEGUR
vs.
PELLERIN.

utmost importance. The judicial history of our state is not without examples of ineffectual attempts to interdict individuals, and cases of this kind may again arise. This court has decided in the case of *Stafford* vs. *Stafford*, 1 *Martin, N. S.*, 551, that a judgment of interdiction cannot be rendered on *ex parte* testimony, and that the person sought to be interdicted, must be notified. That case is a striking illustration of the importance of the rule we now lay down. The party sought to be interdicted, was not informed of the proceeding against her, and the inferior court rendered a judgment of interdiction ; she discovered it, took an appeal, and reversed the judgment.

A judgment of interdiction rendered as *ex parte* testimony, is erroneous, and will be reversed on appeal.

It will, no doubt, be said in this case, that the judge appointed counsel to represent the defendant. We think the article 384, of the code under which that was done, has been misapprehended. It says, the judge shall pronounce on the case, " after having heard the counsel of the person, whose interdiction is prayed for ; whom it shall be the duty of the judge to name, if one be not already named by the party." It is evidently the intention of the law, that the party should have an opportunity to employ such counsel as he liked, and to enable him to do so, he ought to be notified. It is alleged, that Pellerin is over twenty-one years of age ; and it is sought not only to deprive him of the control of his property and person, but to hold him up to the world as an idiot or a maniac, without his ever having any notification of it. Such a doctrine, would put many eccentric but sensible men, completely at the mercy of any one, who, through malice or error, might commence proceedings to interdict them.

The law requires, that the person intended to be interdicted should be notified of the suit, and have the opportunity to employ his own counsel, before any is appointed by the judge.

The authority conferred on this court, by the article 389, of the code, and the seriousness of the case, has induced us to scrutinize it closely, and the result is, a conviction that the whole proceedings ought to be set aside.

It is, therefore, ordered, that the judgment of the Court of Probates be reversed and annulled, and the suit dismissed, at the costs of the plaintiff, in both courts.