(61 South. 406.)

No. 19,795.

PONS et al. v. PONS.

In re PONS.

(Feb. 17, 1913. Rehearing Denied March 17, 1913.)

*(Syllabus by the Court.)*

1. INSANE PERSONS (§ 32\*)—INTERDICTION—JURISDICTION—PROBATE COURTS.

The probate court is the proper tribunal to institute actions for the interdiction of insane persons. Stafford v. Stafford, 5 Mart. (N. S.) 136; Segur v. Pellerin, 16 La. 63; Code Prac. art. 924, pars. 2, 8, and 10, arts. 962, 997, 998, 1013; Bouvier, vol. 1, p. 465; Act No. 229, § 9, p. 191, 1853; Act No. 255, § 9,

p. 316, 1855; Act No. 44, § 8, p. 84, 1864–65; Act No. 80, p. 78, 1869.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 47; Dec. Dig. § 32.*]

2. Jury (§ 11*)—Right to Trial by Jury—Interdiction of Insane Persons.

All causes tried before a court of probate shall be decided without the intervention of a jury, even if the parties should wish for one. Code of Practice, arts. 124 and 1036; In the Matter of William Ross, 38 La. Ann. 523.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 19–24; Dec. Dig. § 11.*]

3. Courts (§ 200*)—Probate Jurisdiction—District Courts.

Prior to 1853 the several district courts in the parish of Orleans had concurrent jurisdiction in probate matters. Act No. 43, § 10, p. 33, 1846.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 441, 442, 454, 469–471; Dec. Dig. § 200.*]

4. Insane Persons (§ 32*)—Interdiction—Probate Jurisdiction—District Courts.

Act No. 229, § 9, p. 191, 1853, constituted the Second district court of the city of New Orleans a probate court, with jurisdiction of succession matters and "all appointments which may hereafter become necessary of curators for persons interdicted and absentees."

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 47; Dec. Dig. § 32.*]

5. Courts (§ 202*) — Sessions — Probate Cases.

The rules of the civil district court for the parish of Orleans, adopted by the judges of said court, do not provide for special fixing of interdiction or probate cases. Article 136, Constitution of 1898; Act No. 243, p. 407, 1910.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202.*]

Proceeding by Mrs. Josephine Pons and others to have Marie Madeline Pons, widow, interdicted and a curator appointed to take charge of her and her affairs. The demand of plaintiffs for a trial by jury was refused, and they apply for writs of mandamus and certiorari. Denied.

Lazarus, Michel & Lazarus, and David Sessler, all of New Orleans, for relator. Woodville & Woodville and Paul L. Fourchy, all of New Orleans, for respondents.

SOMMERVILLE, J. Plaintiffs, the daughters of the defendant, seek to have their mother, the defendant, interdicted, and to have a curator appointed to take charge of her and her affairs; and they ask for trial by jury.

The district judge has refused the trial by jury; and plaintiffs now seek a mandamus to compel him to at once assign and fix the cause for hearing at an early date, and to issue an order for a venire of jurors within 10 days of the date of the final judgment of this court herein, for the purposes of trial.

[1, 2] The judge makes return that, this being an interdiction proceeding, it is a probate matter, and subject to the rules governing probate courts and matters. He refers to article 1036 of the Code of Practice, which provides:

"All causes tried before a court of probate shall be decided without the intervention of a jury, even if the parties should wish for one."

We have not been referred to any definition which describes generally the jurisdiction pertaining to probate courts. Such courts are usually created by statutes, and their jurisdiction defined in the statutes. We must therefore look to the statutes of the state to determine the jurisdiction of probate courts here, and also to determine what are considered probate matters.

Probate courts, in some other jurisdictions, derive their origin from the ecclesiastical courts of England; while we shall look to the statute law of this state to determine the question at issue: "Is an interdiction proceeding to be submitted to a jury for a verdict?"

In probate courts in the states having their origin in ecclesiastical courts, the issues of fact are not tried by jury; and it has been there construed that the jurisdiction pertaining to probate courts included the jurisdiction to appoint guardians for minors and insane persons.

Bouvier defines a court of probate in American law to be:

"A court which has jurisdiction of the probate of wills and the regulation of the management and settlement of decedents' estates, as well as a more or less extensive control of the estates of minors and other persons who are under the especial protection of the law."

The term "jurisdiction" pertaining to probate courts has no settled legal definition. Courts of probate had no existence at common law. These courts have been created and their duties and jurisdictions defined, in a greater or less degree, by law in most, if not all, the states of the union. In the majority of the states, at the time of the adoption of the Constitution, the authority to appoint guardians to the persons and estates of insane persons was vested in the probate courts. Probate courts are generally held to relate to proceedings in succession matters, and to those persons under some disability and liable to wardship.

Turning to section 1768, Revised Statutes, we find that the Legislature has provided that any lunatic or insane person may be brought before the district judge, in chambers; and if in his opinion, the person should be sent to or confined in the state insane asylum he (the judge) shall make out his warrant to the sheriff of the parish, commanding him to convey the lunatic or insane person to the insane asylum. The proceeding in such case is without a jury. In re Wm. Ross, 38 La. Ann. 523.

Turning to the Code of Practice, art. 924, we find that:

"Courts of probate have the exclusive power * * * to appoint tutors and curators for minors, interdicted and absent persons, who have no representatives in the state, and for such persons as are not capable of administering their own property."

And:

"To interdict persons who fall into a state of madness, and to restore them to the enjoyment of their rights when they regain their reason."

And, further:

"To remove or supply the places of such tutors, curators and testamentary executors, in the cases provided by law."

Turning, again, to the Code of Practice, we find that the rules prescribed "with respect to the tutorship of minors, shall govern as regards the curators of interdicted persons." And articles 997 and 998 give to the court of probate jurisdiction to compel curators of interdicted persons to account and pay over what they may be found to owe to the interdict; and the interdicted person, when restored to his right, must petition the court of probate to compel his curator to account for his management, and be decreed to pay such sum as may be due. Curators of interdicted persons may be removed by the court of probate. Article 1013.

The foregoing provisions were the bases of our opinion in Segur v. Pellerin, 16 La. 63, where we say, "The probate court is the proper tribunal to institute actions for the interdiction of persons," following the case of Stafford v. Stafford, 5 Mart. (N. S.) 136.

Relators argue further that the above provisions from the Code of Practice have application to the parish courts throughout the state outside the parish of Orleans, and not to the district court in that parish. The district court of that parish is the successor to the parish court of that parish, and the statute law with reference to probate matters and courts was originally of equal application throughout the parishes of the state.

[3] Prior to 1853 the several district courts in the parish of Orleans had concurrent jurisdiction in probate matters. Act 43, p. 33, § 10, 1846.

[4] In 1853 (Act 229, § 9, p. 191) the Legislature constituted the Second district court in the city of New Orleans a succession or probate court, and conferred upon it jurisdiction over all successions, further providing that:

"All appointments which may hereafter become necessary of curators for persons interdicted and absentees, shall be made in said court."

In 1855 (Act 255, § 9, p. 316) the Legislature again construed interdiction proceedings

as probate matters, and gave the probate court of Orleans jurisdiction over them in the following language:

"Sec. 9. That all successions shall be opened and administered in the Second district court, and all appointments that may become necessary in the course of administration of estates, all matters relating to the tutorship of minors, curatorship of persons interdicted and of absentees, shall be made and carried on in said court."

And in 1864–65 (Act 44, § 8, p. 84) the Legislature, after declaring "that the Second district court shall be strictly a probate court, and shall have exclusive jurisdiction only of all successions and probate causes," conferred jurisdiction therein in cases of interdiction in the language quoted above from the act of 1855.

In 1868 Act No. 66, p. 78, conferred jurisdiction upon the Third, Fourth, Fifth, Sixth, and Seventh district courts of the city of New Orleans—

"to try all cases of interdiction and suits for separation from bed and board or divorce, and act in cases of emancipation of minors when those courts have jurisdiction of the person."

Between 1853 and 1868 the probate court of Orleans had exclusive jurisdiction of interdiction proceedings. By Act 66 of the latter year the other district courts of that parish were given jurisdiction "to try all cases of interdiction."

In 1869 (Act 80, p. 78) the Legislature declared it to be the duty of the clerks of the several district courts of Orleans to transfer all succession and interdiction records, with some others, to the Second district court, which "has exclusive jurisdiction by virtue of existing laws" in those matters.

In 1870 (Act No. 98, C. P. art. 126) the Legislature provides that the Second district court shall have exclusive probate jurisdiction; and that the other district courts, naming them, shall have concurrent jurisdiction in all cases except probate, and—

"in all cases of interdiction and suits for separation from bed and board or divorce, and act in cases of emancipation of minors, when they have jurisdiction of the person."

Yet in the same act (article 124) the Legislature says:

"The rules of proceedings, contained in the present title [title No. 1, in which article 126 is found], relate only to the district and parish courts of the state, when in the exercise of their ordinary jurisdiction.

"Special rules are hereafter established for courts of probate and justices of the peace."

"Title 3" relates to "Proceedings in Courts of Probate," and in that title are found the provisions, hereinbefore recited, referring to interdiction proceedings.

We therefore conclude that, while district courts, prior to 1853 and after 1879, and the present civil district court of the parish of Orleans, had and have concurrent jurisdiction in all civil matters as is now set forth in article 133 of the Constitution of 1898, interdiction proceedings have been almost uniformly classed as probate matters, and that they are subject to the rules of law appertaining to the latter.

And that, while said article 133 provides that:

"The civil district court shall have exclusive and general original probate jurisdiction, and exclusive original civil jurisdiction, in all cases where the amount in dispute or the fund to be distributed shall exceed one hundred dollars, exclusive of interest; and exclusive jurisdiction in suits by married women for separation of property, in suits for separation from bed and board, for divorce, for nullity of marriage, or for interdiction," etc.

—the convention was only enumerating the cases over which that court should have jurisdiction; and that it did not undertake to define what probate jurisdiction or matters were; and that it did not determine that an interdiction proceeding was not a probate matter.

In view of the almost uniform action of the Legislature in treating interdiction proceedings as probate matters, and of the jurisprudence of this and other states to the same effect, we hold that interdiction pro-

ceedings are governed by the rules found in title 3 of the Code of Practice, and that such a case cannot be tried by a jury.

[5] With reference to the application to order the special fixing of this cause for trial in the district court, we find no authority vested in the judge of division A, or in this court, to so order.

Article 136 of the Constitution of 1898 gives to the judges of the civil district court authority to adopt rules regulating the fixing of causes for trial, etc., in that court; and the respondent judge has annexed a copy of those rules to the return to the order issued herein.

Relators cite us to a proviso in rule 10, as follows:

"Provided, that it shall be competent for either of the judges to direct the fixing of such causes upon other days than those specially designated should it be necessary or expedient."

The cases there referred to are "summary causes," and this case is not classed as summary. Act 243, p. 407, 1910. Besides, the authority given is vested in the discretion of the district judge. It is he who is to determine the matter of necessity or expediency.

This case appears to be properly docketed and entered on the proper call docket.

The trial judge has done his full duty in the premises; and the petition for a mandamus directed to him is denied.