(90 South. 735)

No. 23289.

### VANCE v. ELLERBE.

(Jan. 2, 1922. Rehearing Denied Jan. 30, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Insane persons** ⟿2—**Burden on one attacking acts of insane person not interdicted to show incapacity and knowledge thereof.**

In view of Code Prac. art. 102, and Civ. Code, arts. 1782, 1788, and 1789, all relating to disqualifications of insane persons to sue or to contract, one who attacks the acts of a person of unsound mind, but not interdicted according to the forms provided by the Civil Code, bears the burden of proving his incapacity, and that it was either generally known, or that the person who contracted with him knew it.

2. **Insane persons** ⟿100—**Judgment against insane defendant held voidable, but not void.**

Where a defendant in partition proceedings was insane, but not interdicted, and the citation of such defendant was valid on its face, a judgment rendered in the proceeding was voidable, but not void.

**3. Insane persons ⬤⇒100—Judgment against insane defendant will not be annulled, unless other defendants are before the court.**

A judgment in partition will not be annulled for the reason that one of the defendants was insane, unless the other parties to the judgment are before the court.

**4. Insane persons ⬤⇒95—Citations served at home of insane person held valid, notwithstanding such person was in an asylum.**

A citation against an insane person not interdicted, which is regular in form, and bears the return of a legal domiciliary service made at the home of defendant, *held* valid, notwithstanding that defendant was in an asylum elsewhere, since, if he had no capacity, he could not acquire a new domicile, in view of Civ. Code, art. 41 et seq.

**5. Adverse possession ⬤⇒84 — Prescription; purchaser in bad faith may continue possession begun in good faith by his grantor.**

Where Z.'s purchase of land at partition sale, although it gave him title regular and translative of property on its face, was not a purchase in good faith, since Z. knew of the mental incapacity of one of the owners of the property, and defective service of process on him, prescription acquirendi causa did not begin to run during Z.'s ownership and possession; but where later the property was sold under judgment at syndic's sale in suit between Z. and his creditors, and was bought in by T., who was not shown to have been aware of the partition sale irregularities, prescription began to run from the date of his acquisition, and, under Civ. Code, art. 3482, even if T.'s subsequent vendees were in bad faith, this would not interrupt or prevent the running of prescription, as it had been validly commenced under the possession of T.

**6. Limitation of actions ⬤⇒74(1)—Prescription; exemption from prescription of "persons under interdiction" does not include persons merely committed.**

In Civ. Code, art. 3522, providing that minors and "persons under interdiction" cannot be prescribed against, except in cases provided by law, the term "persons under interdiction" is used advisedly, and in the sense of a judgment rendered contradictorily, as required elsewhere in the provisions of the Code, and does not include persons merely committed under Rev. St. § 1768.

**7. Parties ⬤⇒76(3)—Curator's incapacity to sue waived by not pleading in limine.**

Objection to the capacity of a curator to sue is waived by not pleading it in limine.

**8. Adverse possession ⬤⇒57 — Prescription; burden of showing interruption of prescription is on the one who seeks to benefit thereby.**

In partition, where defendant has shown the lawful commencement of a prescription and the expiration of the time required to make it perfect, the burden of showing its interruption is on plaintiff, who seeks to benefit thereby.

**9. Insane persons ⬤⇒7 — "Interdiction" and "commitment" distinguished.**

The law provides two separate proceedings for dealing with persons of unsound mind: "Commitment," under Rev. St. § 1768 et seq., which is a proceeding for the restraining and confining of insane persons for their own and the public's protection, and is ex parte and in the name of the state; and "interdiction" under Civ. Code, arts. 389–426, inclusive, which deals with the civil and property rights of such persons; and the former proceeding is informal, and need not be set aside when the patient recovers, while the latter is highly formal, and requires all the solemnities of contested judicial proceedings, including a formal judgment to restore civil rights after the mental derangement has ended.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commitment.]

**10. Insane persons ⬤⇒7—Commitment to state asylum held not under provisions for civil interdiction.**

A proceeding to commit an insane person to a state asylum *held* taken under Rev. St. § 1768, and not under the provisions of the Civil Code relating to civil interdiction, notwithstanding the use of the word "interdicted" in the order of commitment.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Suit by James Washington Vance, by his curator, against Mrs. Cecelia L. Ellerbe. From the judgment, plaintiff appeals. Affirmed.

Barret & Files, of Shreveport, for appellant.

Thigpen & Herold and Blanchard, Goldstein & Walker, all of Shreveport, for appellee.

DAWKINS, J. Plaintiff institutes this suit through his alleged curator, S. W. Vance,

alleging that he has been for several years confined in the State Asylum for the Insane at Jackson, La.; that petitioner is the owner of an undivided three-fourths interest in certain real property situated in the parish of Caddo, known as the "Haynes plantation," and that he acquired the same under the last will and testament of one William Haynes, who died in 1870. He further alleges that defendant contends that said interest was divested by an attempted sale under a judgment rendered in the partition suit of Nancy I. Mitchell et al. v. S. J. Zeigler et al., on the docket of the district court for Bossier parish, in which an attempt was made to sell the whole of said property in 1891, but that, at the time said suit was filed petitioner was notoriously insane, having been confined in the Louisiana Retreat in the city of New Orleans from 1886 to 1895, when he was removed to the asylum at Jackson; that his said mental condition was well known to all the parties to said suit, as well as to the purchaser at the partition sale and subsequent authors of defendant's title; that no tutor or curator was appointed to represent him, and the pretended service was made by leaving the copy of petition and citation at the home of his mother, Mrs. S. E. Vance, when it was well known by all that he was then and had been for several years confined in the aforesaid hospital. For these reasons, he alleges that the said partition sale was, as to him, absolutely null and void. He accordingly prayed for a partition, and that his right to sue for rents and revenues be reserved. At the same time he obtained a rule upon the defendant to show cause why the property should not be divided in kind; but, upon exception of the defendant, this rule was dismissed.

Defendant then answered, admitting that plaintiff had once owned an interest in the property under the title alleged, but averring that it amounted to only one-eighth. She further denied the invalidity of the partition proceedings, and averred that she and her ancestors in title had been in possession of the property for many years, and had placed valuable improvements thereon, for which she was entitled to recover, if plaintiff should be held to have an interest therein, and also prayed that her right to claim reimbursement therefor be reserved.

Subsequently defendant pleaded the prescription of 10 years acquirendi causa, and, in a lengthy opinion, the lower court held the partition proceedings void, but sustained the plea of prescription and rejected plaintiff's demand. Plaintiff has appealed, and defendant has answered, praying that the said partition proceedings be held valid.

### Opinion.

Defendant's counsel concede in their brief that James Washington Vance was notoriously insane when the partition proceedings were had in 1891, but contend:

(1) That the judgment therein was valid;

(2) That, if not valid, it was only voidable, and not void; and,

(3) That the plea of prescription acquirendi causa should be sustained.

We shall dispose of these issues in the order mentioned.

### As to the Validity of the Partition Proceedings.

It is clearly shown that James W. Vance became insane at about the age of 18 years, and was confined in a private hospital in the city of New Orleans, and that his mental condition was generally known in the community in which he lived in Bossier Parish. With this condition existing, certain of the beneficiaries under the will of William Haynes, residing in the state of Texas, instituted a partition suit against the other co-owners, including the present plaintiff; he being sued therein as a person sui juris. The return on the citation addressed to him reads as follows:

"Received the within citation on the 8th day of October, 1891, and on the 8th day of October, 1891, served the same on the within named J. W. Vance at his residence in Bossier parish, La., 10 miles from the courthouse in the parish of Bossier, La., by handing a certified copy hereof, together with a certified copy of plaintiff's petition, to Mrs. S. E. Vance, a person apparently over the age of 14 years and personally known to me, living in the same house with the said J. W. Vance, who was temporarily absent from home at the time of said service."

There was judgment recognizing plaintiff and defendants, including J. W. Vance, as owners of the property in indivision, the latter to the extent of one-eighth; the property was regularly sold thereunder, and bought in by S. J. Zeigler, husband of one of the sisters and co-owners of plaintiff. Nothing had been done looking to the interdiction of plaintiff up to that time, notwithstanding his notorious insanity, nor was any action taken to that end until 1895, some four years later.

Counsel for plaintiff say that it was the duty of the petitioners in said partition suit to have first provoked the interdiction of plaintiff and the appointment of a curator; while defendant contends that it is only persons who have been formally interdicted who must be sued through their curators, and, until this is done, they may be sued as persons sui juris.

In support of her contention, defendant cites the first article of the Code of Practice to the point that every person has the "right to claim judicially what is due or belongs to him," except those whom the law has specifically declared incapable of appearing in court. She further quotes the following articles of the said Code of Practice, emphasizing those words which we have italicized, to wit:

"Art. 108. Minors, *persons interdicted* or absent, cannot sue, except through the intervention or with the assistance of their tutors or curators.

"Art. 109. Tutors act themselves in all judicial proceedings in the name of their minors, and in all suits which may be brought for them, without making them parties to said suits.

"The curators of *persons, interdicted*, or absent, act judicially in the name of those they represent, in the same manner as tutors of minors."

"Art. 115. Actions against *interdicted persons* or minors must be brought directly against the tutor of the minor or the curator of the interdicted person."

"Art. 194. If the suit be brought against minors not emancipated, *interdicted* or absent persons, whose property is administered by a curator, then the petition and citation must be served either by delivery in person to the tutor or curator of such minors, *interdicted* or absent *persons*, or by leaving them at the usual place of domicile * * * of such tutor or curator."

The argument is that the law writer has advisedly used the words "interdict" and "interdicted persons" in a technical sense, as distinguished from a person of unsound mind and not formally interdicted, for the reason that, where there has been a lawful interdiction, all persons are legally charged with knowledge of the incapacity, whereas, in cases of insanity or unsound mind not judicially declared, with the consequent restriction of civil rights, the validity of judicial proceedings had with such persons would depend upon the finding of the court as to mental status in each particular case.

Defendant further contends that it was not required that a curator ad hoc be appointed for J. W. Vance, for the reason that at the time of the suit he had not been "committed to an insane asylum," as provided in article 964 of the Code of Practice. The provision in this article, permitting the appointment of a curator ad hoc in suits brought against "insane persons not interdicted, but committed to an insane asylum," was added to the old Code of 1870 by an amendment embraced in Act No. 308 of 1910, and hence could have no application to a suit brought in 1891, unless it be to illustrate the purpose of the Legislature to require, as con-

tended by defendant, that such persons must at least be committed to an asylum before it should become necessary to have them represented.

However defendant appears to have overlooked article 102 of the Code of Practice, which reads:

"Those who are disqualified from contracting are generally disqualified from suing.

"The exceptions to this rule are provided in the following articles."

The very articles of the Code of Practice which counsel for defendant cite, and which we have quoted above, would appear to be the exceptions referred to in the second paragraph of this last-quoted article—that is, among persons disqualified from contracting, who may be sued, are those of unsound mind who have been formally interdicted and are represented by curators. This article is the very first under chapter 5, dealing with "What Persons are Entitled to Bring Actions," and when construed in connection with article 1782 of the Revised Civil Code, to wit:

"All persons have the capacity to contract except those whose incapacity is ex. ;essly declared by law. These are *persons of insane mind*, those who are interdicted, minors and married women"

—we think it clear that the lawmaker has, by express provision, declared persons of unsound mind, though not interdicted, incapable of suing.

But this incapacity is not, in our opinion, absolute, as in the case of minors and married women (formerly), for, as demonstrated by the succeeding articles of the Civil Code, a person of unsound mind, not interdicted, may, under the circumstances therein set forth, make binding contracts. The first paragraph of article 1788, R. C. C., provides:

"The contract entered into by a person of insane mind, is void as to him, for the want of that consent, which none but persons in possession of their mental faculties can give. It is not the judgment of interdiction, therefore, that creates the incapacity; it is evidence only of its existence, but it is conclusive evidence, and from these principles result the following rules. * * *"

Then follow 13 consecutively numbered sections or paragraphs, detailing the circumstances and conditions under which the insane person and his heirs are or are not bound by his acts. Section No. 1 declares:

"That, after the judgment of interdiction, no other evidence than the interdiction itself is necessary to prove the incapacity of the person, and to invalidate any contract he may have made after the day the petition for interdiction was presented, and that no evidence to show that the act was made during a lucid interval, or to contradict the judgment of interdiction, can be admitted."

Section No. 2 provides that as to contracts made—

"prior to the application for the interdiction, they can only be invalidated by proving the incapacity to have existed at the time the contracts were made."

No. 3 says that it is not sufficient, as to contracts made under the circumstances mentioned in section 2, to prove the insanity, but that it must also be shown that the fact was generally known, or that the person who contracted with the insane person knew of his insanity. Section No. 4 reads:

"That, except in the case of death hereafter provided for, no suit can be brought, nor any exception made, to invalidate a contract on account of insanity, unless judgment of interdiction be pronounced before bringing the suit, or at least applied for before making the exception."

No. 5 declares that if the party dies within 30 days after making the contract, the insanity may be shown without first having made the application for interdiction; but, if a longer time elapse before the death, the insanity cannot be shown where the application has not been made, except that, as provided in section 6, where the act itself shows evidence of insanity, in which case (No. 7) other proof of insanity may be offered by the party alleging it or required by the judge.

Section No. 8 lays down a different rule with respect to donations, permiting proof of insanity to be made at any time with respect thereto. Section No. 9 allows evidence of habitual insanity to be rebutted by proving that the act was made during a lucid interval, but places the burden of proof upon the party so claiming. No. 10 makes the same rule with regard to testaments as above noted for other donations. Section 11 declares that the assertion in a will that the testator is of sound mind does not prevent proof to the contrary. No. 12 explains that the petition for interdiction mentioned throughout the article means one which has not been withdrawn or dismissed. Section No. 13 we quote:

"That, while the judgment of interdiction is in force, it is conclusive evidence of incapacity; but that it may be annulled, whenever the insanity ceases, but it can only be annulled by a judgment."

We also quote article 1789, as follows:

"A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent."

[1] From these provisions of the law, it is apparent that one who attacks the acts of a person of unsound mind, but not interdicted according to the forms provided by the Civil Code, bears the burden of proving his incapacity, and that it was either generally known, or that the person who contracted with him knew it. As a condition precedent to the bringing of such a suit, the person alleged to be insane must have been interdicted, unless he has died within 30 days after the contract was made; and, in order to make the defense of insanity, application for interdiction must at least have been filed, unless the act show upon its face evidence of insanity. In other words, if this were a direct action by the plaintiff to annul a conventional partition to which he had been a party, his petition would, under section 4 of article 1788, disclose no cause of action, unless he alleged that he had been formally interdicted; or, if he were sued upon some contract, he could not plead his incapacity without application for his interdiction having first been made.

[2] Reasoning by analogy, it would therefore seem to follow logically that plaintiff's incapacity in the suit of 1891 could not have been urged as a defense thereto until application for his interdiction had been made, and that said incapacity was relative and not absolute, with the result that that judgment was voidable, but not void. It was rendered upon a citation valid upon its face, and, in order to establish its infirmity, the same had to be alleged and proven. Spurlock v. Noe, 19 Ky. Law Rep. 1321, 43 S. W. 231, 39 L. R. A. 779; Johnson v. Pomeroy, 31 Ohio St. 247; Maloney v. Dewey, 127 Ill. 395, 19 N. E. 848, 11 Am. St. Rep. 131; Fowler v. Gordon, 24 La. Ann. 270; Bayhi v. Bayhi, 35 La. Ann. 529; Paul v. Lamothe's Heirs, 36 La. Ann. 318; Hamilton v. Hamilton, 130 La. 302, 57 South. 935.

[3] It is true that defendant never made the defense that the judgment in the case of Mitchell et al. v. Zeigler et al. could not be attacked collaterally, nor was any objection to evidence on that score made; but, even if we were to sustain the view that that judgment should be annulled, we could not do so without the other parties thereto being before us.

[4] Plaintiff further urges that there was no lawful service of citation upon J. W. Vance; but, as heretofore pointed out, the citation in question was regular in form, and bore the return of a legal domiciliary service. Of course, if the place where it was served was not Vance's domicile, then there was no service in law. However, it is admitted—in fact, the very basis of this suit is that Vance was incapable of exercis-

ing any of the powers of a person sui juris. If this be true, then he had no capacity to form the intent, which, coupled with the fact of residence, was necessary to change or acquire a new domicile. R. C. C. art. 41 et seq.; Succession of Robert, 2 Rob. 435. Hence his domicile remained at the home of his mother, where it had always been prior to his committment to the asylum. If this were not so, then the court was without jurisdiction to entertain the very proceeding under which plaintiff claims to have been interdicted. Besides, the action of partition was one over which the court within whose jurisdiction the property was situated alone had the power to entertain jurisdiction, regardless of the residence of the parties thereto.

### Plea of Prescription Acquirendi Causa.

[5] The record shows that S. J. Zeigler was the purchaser at the partition sale, on December 12, 1891, and that he was entirely familiar with plaintiff's mental incapacity; so that, although his title was regular and translative of property on its face, he was not a purchaser in good faith, and prescription did not begin to run during his ownership and possession. On January 18, 1897, the property in contest was sold under judgment of court at syndic's sale in the case of S. J. Zeigler v. His Creditors, and bought in by one Peter J. Trezevant, who possessed it until June 30, 1900, when it was sold to the Huron Land Company. There is nothing to show that he was aware of the irregularities attaching to the partition sale, and under express provision of the Code is presumed to have possessed in good faith; and, his title being translative of property in form, prescription commenced to run from the date of his acquisition. The Huron Land Company sold to T. M. Yarbrough on March 10, 1902, and the latter to Clarence Ellerbe February 27, 1907, and Ellerbe sold to A. H. Leonard May 13, 1912, from whom defendant

inherited the property in 1917. Conceding that Trezevant's vendees, Huron Land Company and Yarbrough, were in bad faith, which does not appear to be sustained by the record, this would not, in itself, have prevented the running of prescription, for the reason that it had validly commenced under the possession of Trezevant. C. C. art. 3482; Brewster v. Hughes, 113 La. 51, 36 South. 883.

Plaintiff contends that the running of prescription was suspended or prevented by certain proceedings which were had with regard to the sanity of James W. Vance in 1895. On March 5th of that year the district attorney for Bossier parish addressed to the district court for that parish a petition, with accompanying affidavit, and upon which a decree was entered as follows:

"To the Hon. Judge of the 2d Dist. Court of La. Holding Sessions in and for Bossier Parish:

"The petition of A. J. Murff, Dist. Atty. 2d Dist. of La., with respect represents: That J. W. Vance, a resident of Bossier parish, La., is a person of unsound mind, insane, and dangerous to be at large.

"That his mother, Mrs. S. E. Vance, and his brother, S. W. Vance, are able and willing to pay for his treatment, etc., in the Louisiana State Asylum, at Jackson, where it is necessary that he be placed as a patient for treatment and care.

"Therefore, the premises considered, petitioner prays that he be interdicted, after examination, and declared to be insane and dangerous to be at large, and ordered placed in the State Asylum at Jackson, La., as a pay patient, for all orders, and general relief.

"[Signed] A. J. Murff,
"Dist. Atty., for State."

"State of Louisiana, Parish of Bossier:

"Personally appeared before me, the undersigned authority, W. C. Vance, S. N. Arnold, and J. G. Ogden, who, after being duly sworn, depose and say that they know J. W. Vance, and that he is an insane person who is dangerous to be at large, and requires the medical treatment and attention of an insane asylum, and recommend the interdiction of said J. W. Vance, and that he be sent to the state asylum

as a pay patient; his brother and mother being amply able to meet all cost of same.

"[Signed]   W. C. Vance.
"S. N. Arnold.
"J. G. Ogden.

"Subscribed to and sworn before me this 5th March, 1895.

"[Signed]   R. C. Stinson,
"J. P. 2d Ward, Bossier Parish, La.

"We, Mrs. S. W. Vance, mother of J. W. Vance, and S. W. Vance, brother of J. W. Vance, recommend his interdiction, and are willing to meet all expenses necessary for care and treatment in the La. State Asylum as a pay patient.

"[Signed]   S. W. Vance."
"S. E. Vance."

Accompanying this petition was the certificate of two physicians, as follows:

"In the Matter of the Interdiction of J. W. Vance.

"We, the undersigned, hereby certify that we know J. W. Vance of unsound mind, and that it is dangerous for him to be at large, and recommend that he be incarcerated in the insane asylum at Jackson, La.

"Done and signed this 11th March, A. D. 1895.

"[Signed]   G. A. Wise, M. D.
"J. W. Allen, M. D."

"Upon the examination by two physicians in regular practice, and upon certificate filed with the papers in this case that J. W. Vance is insane, and upon the evidence above offered, it is ordered that J. W. Vance be interdicted on account of insanity, and be sent to the insane asylum at Jackson, La., for treatment as a pay patient.

"Thus done, read and signed at chambers March 7, 1895.

"[Signed]   J. T. Watkins,
"Judge 2d D. C."

Thereafter, on October 21, 1895, Samuel W. Vance, brother of the present plaintiff, filed a petition alleging that the latter had been interdicted by the proceeding quoted above, and praying that the petitioner be appointed curator for the alleged interdict. This application was duly published, and on December 30, 1895, the said applicant was, by an order of the clerk of court, appointed curator for the said J. W. Vance. Inventory was taken, but which did not include the interest in the property now in controversy. S. W. Vance took the oath of office and letters were issued to him as curator for his brother.

[6] The issue now under discussion depends upon whether the proceeding above quoted was an interdiction under the provisions of the Civil Code, or a mere commitment under section 1768 of the Revised Statutes of 1870. If the former, then prescription never commenced to run, for we have found that Zeigler was in bad faith, and Trezevant did not acquire the property until 1897, some two years afterwards. Article 3522, R. C. C., provides:

"Minors and *persons under interdiction* cannot be prescribed against, except in the cases provided by law."

There is no exception in favor of actions of the character now before us; but we think the Code uses the term "persons under interdiction" advisedly, and in the sense of a judgment rendered contradictorily, as required elsewhere in its provisions heretofore referred to and discussed.

[7, 8] Plaintiff correctly urges that objection to the capacity of the curator to sue in the present case was waived by not pleading it in limine; but the question here is not as to his capacity to stand in judgment in this case, but as to the legal effect of those proceedings with regard to the interruption or noninterruption of prescription. Defendant having shown the lawful commencement of that prescription, and the expiration of the time required to make it perfect, we think the burden of showing its interruption was upon plaintiff, who seeks to benefit thereby. Hence the sufficiency of those proceedings to constitute an interruption must be determined, notwithstanding the waiving of the question of the capacity to stand in judgment in this suit.

We have already referred in detail to the requirements of the Code (articles 389 to 426,

inclusive) on the subject of interdiction. The suit must be by petition addressed to the probate powers of the court, and the person sought to be interdicted must be cited. Gernon v. Dubois, 23 La. Ann. 26; In re Ross, 38 La. Ann. 523; Segur v. Pellerin, 16 La. 63; Stafford v. Stafford, 1 Mart. (N. S.) 551; Babineau v. Bendy and Dugat, 7 La. 248; In re Dumas, 32 La. Ann. 684. The court must appoint an attorney to defend the alleged incapacitated person, if one be not otherwise provided; else the judgment of interdiction is without effect. Gore v. Barrow, 137 La. 320, 68 South. 625. There was no notice or citation of any kind given J. W. Vance in the proceedings of 1895, nor was any prayed for; neither was he represented by counsel; in fact, none of the codal provisions appear to have been complied with.

Before parish courts were abolished, the judges thereof were ex officio judges of the probate courts, and the latter, under express provision of the Code of Practice, had exclusive jurisdiction of suits for interdiction and the appointment of curators. C. P. arts. 128, 923, and article 924, subds. 2 and 10:

"Art. 923. The parish judges are ex officio judges of the courts of probate in their respective parishes.

"Art. 924. Courts of probate have the exclusive power:
*     *     *     *     *     *     *     *

"2. To appoint tutors and curators for minors, interdicted and absent persons.
*     *     *     *     *     *     *

"10. To interdict persons who fall into a state of madness, and to restore them to the enjoyment of their rights when they regain their reason."

And it was held, during the existence of these courts, that the parish judge, as such, could not entertain an interdiction proceeding, but that he could act alone in his capacity as ex officio judge of the probate court, and that it had to affirmatively appear that he had so acted throughout the entire proceeding. Segur v. Pellerin, supra. Yet the very same session of the Legislature (1870) which adopted the Code of Practice also enacted the Revised Statutes of 1870, section 1768 of which reads as follows:

"Whenever it shall be made known to the judge of the *district or parish court* by the petition and oath of any individual that any lunatic or insane person within his district ought to be sent to or confined in the insane asylum of this state, it shall be the duty of the said *district or parish judge* to issue a warrant to bring before him, *in chambers,* said lunatic or insane person, and after proper inquiry into all the facts and circumstances of the case:

"If, in his opinion, he ought to be sent to or confined in said insane asylum, he shall make out his warrant to the sheriff of the parish, commanding him to convey the lunatic or insane person to the insane asylum, for which duty the sheriff shall have the right to demand the same fees as are now allowed by law for the conveyance of convicts to the penitentiary of the State, which shall be paid out of the parish treasury, upon the order of the district or parish judge, and likewise all other expenses previously incurred in bringing said insane person before the district or parish judge."

Subsequent sections provide the conditions of admission, and if the patient is financially able, for the payment of a minimum rate per month for his upkeep; and sections 1776, 1777, require examination by the physicians of the asylum of all persons sent there under section 1768, and, if found not to be insane, the asylum board is authorized to return them to the parish from which they came.

[9] We find, therefore, that the law provided then, and has continued to do so until the present day, two separate proceedings for dealing with persons of unsound mind— the one for the restraining and confining of insane persons for their own and the public's protection, which is ex parte and in the name of the state; and the other dealing with the civil and property rights of such persons. One is informal, and need not be set aside when the patient recovers; while the other is highly formal, and requires all of the solemnities of contested judicial pro-

ceedings, including a formal judgment to restore civil rights after the mental derangement has ended.

[10] In these circumstances, we are forced to conclude that James W. Vance was committed to the state asylum in 1895 under the provisions of section 1768 of the Revised Statutes, notwithstanding the use of the word "interdicted" in the order committing him; for the proceeding fits the requirements of that law, but in no wise complies with the provisions of the Civil Code relating to civil interdiction. The result is that he has never had the status of a person interdicted, so as to be protected by article 3522 of that Code. Cox v. Von Ahlefeldt, 105 La. 543 et seq., 30 South. 175. The plea of prescription was therefore correctly sustained.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.

O'NIELL, J., concurs in the result.