LOTTINGER, Judge.
This is a suit by Mrs. Cecelia S. Ponder, petitioner, against Mary Pechón, Fernand F. Willoz, III, and R. L. Carruth, defendants, to have annulled for mistake, error and misrepresentation, a certain deed or contract filed of record in Tangipahoa Parish, Louisiana, as well as a motion and judgment of dismissal in a previous case dated March 16, 1964. The Lower Court awarded judgment in favor of petitioner and against defendants, and the defendants have taken this appeal.
The evidence reflects that the petitioner and her husband, Leslie B. Ponder, Jr., were separated by a judgment of court dated October 25, 1955. In this judgment, the parties’ rights as to community property and support payments were fixed by the court. By employment contract dated June 28, 1962, the petitioner “in consideration of legal services rendered and to be rendered to her” by the defendants herein, did transfer, assign and quitclaim unto the defendant, a 25% of her half of the total community of acquets and gains consisting of money and property situated in the parishes of Tangipahoa, St. Helena, Washington, St. Tammany, Livingston, East Feliciana, West Feliciana, Ascension, St. James and St. John the Baptist, Louisiana, and property situated in the State of Mississippi and Georgia. At the top of this instrument is printed the wording “DO NOT PUBLISH”.
The defendants were subsequently discharged as attorneys by petitioner, after which a second employment contract was signed by petitioner dated October 10, 1963, the effect of which was to reduce the percentage of the original - contract from 25% to 20% of petitioner’s share in the community. Petitioner claims that at the time of her signing the second employment contract, she was assured that this second deed was to remove the effects of the contract of June 28, 1962, from the public records.
Subsequently, the petitioner filed suit against the defendants seeking the nullity of the said deed because of alleged error. The suit was dismissed upon motion by petitioner in proper person in which she suggested that “mover is now convinced that the contract and deed herein sued upon was not obtained by any undue influence, error or fraud and that she does moreover hereby confirm and ratify the said contract and deed, and desires that her original petition be dismissed with prejudice for the reasons herein set forth”. The order of dismissal was signed on March 16, 1964.
Petitioner filed an appeal to this Court on the order of dismissal, which appeal is reported under docket number 6821 in 169 So.2d 671. At that time we dismissed the appeal because an action of nullity was then pending in the Lower Court. Defendant filed exceptions res judicata to the second suit and the exceptions were dismissed by the Lower Court which restricted the scope of the second action only to those allegations which were different and at odds with the allegations contained in the previous action. The petitioner again appealed to this Court.
In our decision in suit No. 7877 reported in 234 So.2d 809, we held that the Lower Court was correct in dismissing the exceptions of res judicata, however, that the Lower Court erred in limiting the scope of the second action only to those allegations *804 which are different and at odds with the allegations contained in the previous action, saying:
“It appears to us that the thing demanded, in the instant case, is the nullity of the judgment of dismissal rendered below in the first suit, which demand could not and was not present in the first suit. C.C. Art. 2286. If plaintiff is successful in proving the nullity of the judgment of dismissal of the first suit, then there can be no res judicata because there will be no judgment in the first suit.”
Therefore, this judgment of this Court was to the effect that the exceptions of res judicata were dismissed without reservation.
The dispute subsequently went to trial in the Court below after which the Court rendered judgment in favor of petitioner and against defendants in solido, “avoiding, annulling and rescending that deed of record in Conveyance Book 262, Page 586, dated June 28, 1962, of the official records of the Parish of Tangipahoa, State of Louisiana, and all amendments and quitclaims given or granted thereunder” and further “annulling, avoiding and rescending that motion and judgment of dismissal dated March 16, 1964 . . .”
The defendants have taken this appeal.
The issue before the Court relates to the mental capacity of the petitioner at the time she signed the contract of employment as well as the time that she signed the motion of dismissal of her prior suit in proper person. We are not favored with a written opinion by the Lower Court, however, it is apparent that the Trial Court did find that the petitioner was mentally incapacitated at these particular times.
A large number of witnesses were interrogated relative to the mental capacity of the plaintiff during the period of time in question and it is evident that the Lower Court based its decision on this evidence. It is further apparent from this testimony that the plaintiff’s alleged mental incapacity was not of a temporary nature due to the fact that one of the doctors testified he had been treating the plaintiff for well over ten years. There was no allegation in plaintiff’s petition and no proof offered that there had been a judgment of interdiction pronounced before the bringing of the suit or that an application for interdiction had been filed. We are therefore of the opinion, after considering C.C. Art. 1788, that the Lower Court was in error in applying the evidence offered as above referred to.
The Supreme Court of Louisiana in 1922, in the case of Vance v. Ellerbe, 150 La. 388, 90 So. 735, discussed C.C. Art. 1788 at length and we quote the following therefrom, page 737:
“But this incapacity is not, in our opinion, absolute, as in the case of minors and married women (formerly), for, as demonstrated by the succeeding articles of the Civil Code, a person of unsound mind, not interdicted, may, under the circumstances therein set forth, make binding contracts. The first paragraph of article 1788, R.C.C., provides:
‘The contract entered into by a person of insane mind, is void as to him, for the want of that consent, which none but persons in possession of their mental faculties can give. It is not the judgment of interdiction, therefore, that creates the incapacity; it is evidence only of its existence, but it is conclusive evidence, and from these principles result the following rules. * * * ’
“Then follow 13 consecutively numbered sections or paragraphs, detailing the circumstances and conditions under which the insane person and his heirs are or are not bound by his acts. Section No. 1 declares:
‘That, after the judgment of interdiction, no other evidence than the interdiction itself is necessary to prove the incapacity of the person, and to invalidate *805 any contract he may have made after the day the petition for interdiction was presented, and that no evidence to show that the act was made during a lucid interval, or to contradict the judgment of interdiction, can be admitted.’
“Section No. 2 provides that as to contracts made—
‘prior to the application for the interdiction, they can only be invalidated by proving the incapacity to have existed at the time the contracts were made.’
“No. 3 says that it is not sufficient, as to contracts made under the circumstances mentioned in section 2, to prove the insanity, but that it must also be shown that the fact was generally known, or that the person who contracted with the insane person knew of his insanity. Section No. 4 reads:

‘That, except in the case of death hereafter provided for, no suit can he brought, nor any exception made, to invalidate a contract on account of insanity, unless judgment of interdiction he pronounced before bringing the suit, or at least applied for before making the exception.’

“No. 5 declares that if the party dies within 30 days after making the contract, the insanity may be shown without first having made the application for interdiction; but, if a longer time elapse before the death, the insanity cannot be shown where the application has not been made, except that, as provided in section 6, where the act itself shows evidence of insanity, in which case (No. 7) other proof of insanity may he offered by the party alleging it or required by the judge. Section No. 8 lays down a different rule with respect to donations, permitting proof of insanity to be made at any time with respect thereto. Section No. 9 allows evidence of habitual insanity to be rebutted by proving that the act was made during a lucid interval, but places the burden of proof upon the party so claiming. No. 10 makes the same rule with regard to testaments as above noted for other donations. Section 11 declares that the assertion in a will that the testator is of sound mind does not prevent proof to the contrary. No. 12 explains that the petition for interdiction mentioned throughout the article means one which has not been withdrawn or dismissed. Section No. 13 we quote:
‘That, while the judgment of interdiction is in force, it is conclusive evidence of incapacity; but that it may be annulled, whenever the insanity ceases, but it can only be annulled by a judgment.’
“We also quote article 1789, as follows:
‘A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent.’
“(1) From these provisions of the law, it is apparent that one who attacks the acts of a person of unsound mind, but not interdicted according to the forms provided by the Civil Code, bears the burden of proving his incapacity, and that it was either generally known, or that the person who contracted with him knew it. As a 'condition precedent to the bringing of such a suit, the person alleged to be insane must have been interdicted, unless he has died within 30 days after the contract was made; and, in order to make the defense of insanity, application for interdiction must at least have been filed, unless the act show tipon its face evidence of insanity. In other words, if this were a direct action by the plaintiff to annul a conventional partition to which he had been a party, *806 his petition would, under section 4 of article 1788, disclose no cause of action, unless he alleged that he had been formally interdicted; or, if he were sued upon some contract, he could not plead his incapacity without application for his interdiction having first been made.” (Italics ours)
See also Grace v. Eisenhuth et al. (La. App.1933) 150 So. 398, and by analogy see McGee v. Finley, La.App., 65 So.2d 384, and Knight et al. v. Knight et al., 224 La. 483, 70 So.2d 97 dealing with Rules 5 and 6 of C.C. Art. 1788, that when the sale complained of was executed more than 30 days before the death of the vendor, and without having applied for interdiction, the issue of insanity could not be raised. Now there is no death in this case, as a matter of fact, the alleged insane party is the plaintiff herein.
Now since there was no allegation in plaintiffs petition and no proof offered that there had been a judgment of interdiction pronounced before the bringing of the suit or that an application for interdiction had been filed and taking into account C. C.P. Art. 927 which provides in part as follows :
“The court cannot supply the objections of prescription and res judicata, which must be specially pleaded. The nonjoinder of an indispensable party, or the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, may be noticed by either the trial or appellate court of its own motion.”
We are of the opinion that the Lower Court was in error in applying the evidence offered.
For the above and foregoing reasons, the judgment appealed from is reversed and plaintiffs suit dismissed at plaintiffs costs.
Judgment reversed.