(36 South. 883.)

No. 15,156.

BREWSTER v. HEWES et al.

(June 20, 1904.)

PRESCRIPTION — GOOD FAITH — EVIDENCE—DISCLAIMER OF WARRANTY.

1. He who acquires the ownership of an immovable in good faith—i. e., from one whom he believes to be the owner—by a title which would be sufficient to transfer the ownership if derived from the owner, and who holds continuous, uninterrupted, peaceable, public, and unequivocal possession thereof, as owner, "prescribes for it in ten years."

2. Good faith is always presumed in matters of prescription, and he who alleges bad faith must prove it.

3. It is sufficient if the possession has begun in good faith, the fact that it is afterwards held by the original possessor or his successors in title in bad faith not affecting the prescription.

4. Disclaimer or exclusion of warranty is a fact affecting the question of good or bad faith, which is to be considered in the light of surrounding circumstances.

(Syllabus by the Court.)

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; Gregory Horatio Couvillon, Judge.

Action by Hazard Brewster against Thomas H. Hewes and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Joseph Clifton Cappel, for appellant. Joffrion & Joffrion, for appellees Thomas H. Hewes and Dr. Gordon Morgan. Clifton Ashton Smith, for appellees Sam and Rufus O'Quinn and J. W. Oden. William Harris Peterman, for appellee Mrs. Adele McCall. H. C. Edwards and Adolph Jalmeus Lafargue, for appellee Isham Davis.

## Statement.

MONROE, J. This is a petitory action begun in January, 1903, to recover 360 acres of land, forming part of section 35, T. 1 S., R. 6 E., in the parish of Avoyelles. The defendants and their warrantors set up title in themselves, plead prescription, and urge some other matters, which need not be particularized. There was judgment in the district court maintaining the plea of prescription of 10 years, and the plaintiff has appealed.

The evidence shows that the plaintiff and his brother Young Brewster acquired section 35 in 1857, and lived on it until 1861, when they went into the Confederate army, and that, though at the close of the war they re-

turned to the state and parish, they never thereafter returned to the property, which, in 1865, and for some years subsequent to that time, was abandoned, subject to overflow, and almost valueless. In August, 1868, however, the Brewster brothers borrowed $1,200 from J. I. B. Kirk, for which they gave three notes, for $400 each, payable in one, two, and three years, and, by way of security, gave a mortgage on the land in question. In March, 1870, Taylor, McElroy & Co., of New Orleans, obtained judgment against them, by default, on one of the notes so given (being the only one then due), and, in January, 1871, caused the mortgaged property to be seized and offered for sale in satisfaction thereof. Conforming to the then existing law, the sheriff divided the land into 40-acre lots, and, when he had adjudicated seven of them (numbered from 1 to 7, inclusive) to the plaintiff in execution, stopped the sale; leaving the other nine lots, which are the subject of the present controversy, unsold. In March, 1871, the sheriff executed an act of sale, pursuant to the adjudication so made, in which the two outstanding notes, one of which had then matured, are wholly unaccounted for; and the plaintiff and his brother, testifying in this case, admit that they have never paid either of them. In July, 1880, Taylor, McElroy & Co., by an act which recites that it was acquired from J. I. B. Kirk, and was formerly owned by the Brewsters, sold the entire section in question, without warranty, to Mrs. A. D. Harmanson; and in 1883 Mrs. Harmanson, after having sold 50 acres to other persons, entered into a contract, evidenced by a written instrument, for the sale of the remainder to James Williams and Winn Lathan, who went into possession as owners. The instrument mentioned appears to have been lost before it was recorded, and upon April 11, 1885, another was executed, as follows, to wit:

"This agreement between Jas. Williams and Winn Lathan with A. D. Harmanson is in place of the original instrument * * * in which it is stated that they were to pay $3,000 for the Brewster place, with 8% interest per annum from January 1, 1884, until final payment, under these conditions; that they were to move on the place before the 1st of January, 1884, and they were to keep eight working hands on the place all the time, clearing up and cultivating said place in cotton and corn, and they are to pay one-half of whatever is made on the place to A. D. Harmanson until $3,000, with 8% interest, is paid."

This instrument was signed by all parties in the presence of two witnesses and recorded, and the vendees continued in possession of the property. In 1889, however, they appeared in court, complaining that they had been forcibly evicted, and praying for judgment against A. D. Harmanson, individually and as agent of his wife, quieting their possession, and condemning Harmanson and certain other persons in damages; and, on appeal to this court, there was judgment in their favor on both counts. Williams et al. v. Harmanson et al., 41 La. Ann. 702, 6 South. 604. Thereafter, upon August 27, 1889, Mrs. Harmanson executed a more formal notarial act, whereby she conveyed the property to Williams and Lathan, "without any guarantee whatever," for $2,300, payable in one, two, and three years. In March, 1893, Williams & Lathan sold the property to Flower & King, with warranty of title. In 1897 King sold his interest to his partner, Flower. In 1898 Flower sold the entire property so acquired by him, with warranty, to Morgan, who sold part of it to Ogden, who sold to Hewes, Davis, and the brothers O'Quinn. A. D. Harmanson testifies that in 1874 he asked the plaintiff "if he and Young still owned the old Brewster place," and the plaintiff said:

"No; it belonged to J. I. B. Kirk; that they had turned it over to Kirk to satisfy a claim he had against them."

And the plaintiff, who appeared as a witness for himself, does not contradict the statement so made. Harmanson also testifies that, about two years after his wife purchased the property (July, 1880), he offered it to one Collins, who objected to the title on the ground

that Mrs. Harmanson's vendors (Taylor, Mc-Elroy & Co.) had acquired only 7 of the 16 lots; that he then called on Young Brewster, who told him that he and his brother (the plaintiff) had given the property up to Kirk, as the amount that they owed him far exceeded its value; and it is shown that in December, 1889, Young Brewster, by notarial act, for $5 paid him by Mrs. Harmanson, relinquished and abandoned to her any claim to said property that he might have had.

Plaintiff testifies that he paid no taxes after 1869 or 1870, as he supposed that Kirk had foreclosed his mortgage on the whole tract, and the property was in the woods, and was overflowed nearly every year, and that he did not learn that the whole tract had not been sold by the sheriff until October, 1901, when he was so informed by his brother. Young Brewster undertakes to explain his execution of the quitclaim deed to Mrs. Harmanson by saying that J. S. W. Harmanson, a brother-in-law of Mrs. A. D. Harmanson, told him that the whole tract had been sold by the sheriff, and he further states that he knew nothing to the contrary until some time in 1896 or 1897. Upon the other hand, he also testifies that he did not know until 1878 of the suit brought by Taylor, McElroy & Co., though the record shows that the papers were served on him personally in 1870. Williams and Lathan were both sworn as witnesses for the plaintiff, and testify that they bought in good faith, and in the belief that they were getting a good title, and neither knew nor heard anything to the contrary until some time after the execution by Mrs. Harmanson of the act of August 27, 1889. It is shown that the plaintiff returned to the parish of Avoyelles at the close of the Civil War, and lived there until 1873, when he moved to St. Landry, and later to Texas; that in January, 1876, he returned to Avoyelles, and lived there for two years, when he again moved to St. Landry, where he remained until 1882; and that he then went back to

Texas. He admits that he has not occupied the property in question since 1861, and it is conceded that the defendants and their authors have been in continuous, uninterrupted, peaceable, public, and unequivocal possession as owners of the property here claimed for more than 10 years.

### Opinion.

The evidence leaves no room for reasonable doubt that the Brewster brothers, having borrowed $1,200 upon no other security than the property in question, which at that time had little or no value, were perfectly content that it should be taken by their creditor in satisfaction of his claim, and that they considered that he had done so, and so stated to third persons who were interested in the title. Whilst, therefore, such statements may not be, and are not, of themselves, sufficient to convey title to real estate, they have an important bearing in determining whether subsequent purchasers of the land here in question, who were influenced by them, have acted in good faith quoad the interest to which the statements refer. The only objection to the title tendered by Taylor, McElroy & Co. to Mrs. Harmanson was that Taylor, McElroy & Co. did not appear upon the face of the sheriff's deed to have acquired the entire interest of the Brewsters in the property offered. It was, however, patent upon the face of the papers that it had been necessary to sell seven lots for the satisfaction of one note for $400; that, as there were two other notes outstanding, each for $400, the remaining nine lots would not be likely to bring enough to pay them; and that the unpaid balance against the makers would be increased in proportion to the costs and delay incurred in the effort to make the collection by suit. It was therefore manifestly advantageous to the Brewsters to make over the property to Kirk, formally or informally, by act under private signature or otherwise, in satisfaction of his claim; and, as the

plaintiff represented to a prospective purchaser that they had done so, and as he, acting on such representation, bought the property, it is not he, but the plaintiff, who must be held to be in bad faith for the purposes of the present case. The disclaimer or exclusion of warranty in the conveyance from Taylor, McElroy & Co. to Mrs. Harmanson, and in that from Mrs. Harmanson to Williams and Lathan, are, no doubt, facts to be considered, but they are to be considered in the light of the surrounding circumstances, and, so considered, are explained, and do not prove or tend to prove bad faith on the part of the vendees, for, conceding that the vendees were thereby put on inquiry, we must assume that the inquiry, if then made, would have resulted, as did that made by Harmanson in 1874, in the obtention of the assurance from the plaintiff that he had long before turned the property over to Kirk in satisfaction of a debt largely exceeding its value, and that he had no claim upon it. The learned judge of the district court reached the conclusion that all the possessors, from Mrs. Harmanson to the present defendant, were in good faith, and we are of the same opinion.

The law applicable to the subject is that he who acquires the ownership of an immovable from one whom he believes to be the owner, by a title which would be sufficient to transfer the ownership if derived from the owner, and who holds continuous, uninterrupted, peaceable, public, and unequivocal possession thereof, as owner, "prescribes for it in ten years"; that good faith is always presumed in matters of prescription, and that he who alleges bad faith in the possessor must prove it; and that it is sufficient if the possession has commenced in good faith, the fact that it is afterwards held in bad faith, whether by the original possessor or his successor in title, not affecting the prescription. Civ. Code, arts. 3478, 3479,

3481, 3482, 3484, 3485, 3486; Barrow v. Wilson, 38 La. Ann. 209; Pattison v. Maloney, Id. 885; Wells' Ex'r v. Wells, 30 La. Ann. 935; Meibaum v. Brennan, 49 La. Ann. 580, 21 South. 853; Devall v. Choppin et al., 15 La. 566; Templet v. Baker, 12 La. Ann. 658.

For these reasons, the judgment appealed from is affirmed at the cost of the appellant.