14 So.2d 744

**GOREE v. SANDERS et al.**

No. 37000.

June 21, 1943.

Rehearing Denied July 13, 1943.

A. S. Drew, of Minden, for appellant

Seals & Atkins, of Homer, for appellees.

HIGGINS, Justice.

The plaintiff instituted a jactitation action against the defendants, alleging that they are, singularly and collectively, slandering his title to the N½ of the NW¼ of the NW¼ of Section 26, Township 23 North, Range 8 West, Claiborne Parish, Louisiana, by asserting, under recorded mineral deeds, alleged rights covering one-half of the oil, gas, and other minerals contained in the land, after the mineral deeds have prescribed by ten years' prescription acquirendi causa.

The defendants answered denying plaintiff's possession and good faith and converted the suit into a petitory action setting forth their chain of title, and pleaded estoppel on the ground that the plaintiff had signed a division order acknowledging that the defendants owned certain mineral interests in the land and had authorized the Standard Oil Company to pay them their proportionate share of the proceeds of the sale of the oil produced therefrom.

The district court rendered judgment in favor of the defendants, plaintiffs in the petitory action, and the respondent in

that action, or plaintiff in the jactitation suit, has appealed.

The parties agreed to a written stipulation of facts, substantially as follows:

On December 14, 1915, A. M. Evers sold the land in question to C. Wiley Sanders. On February 14, 1919, Sanders executed an oil and gas lease in favor of J. E. Smitherman on the same land with reservation of a 1/8th royalty. On December 23, 1919, Sanders conveyed the property to R. Lester Lewis, reserving and excepting from the sale one-half of all of the oil, gas and other minerals contained therein and properly registered the act of sale. On November 1, 1920, Lewis conveyed to G. T. Goree and E. A. Goree (the plaintiff in the jactitation action), by notarial warranty deed, the same land, without any mineral reservation whatsoever and without in any way referring to the title whereby he had acquired the property, the purchasers recording their deed and taking possession of the property in good faith by a deed translative of title and thereafter, actually and physically, occupied the property and continued to occupy it in good faith from the date of its purchase to the filing of this suit on July 27, 1942. On April 23, 1921, J. E. Smitherman assigned the oil and gas lease to the Ohio Oil Company, reserving a 1/8th overriding royalty. On December 7, 1929, G. T. Goree conveyed to E. A. Goree his half interest in the land, reserving 1/8th of the minerals, which servitude is said to have been lost by ten years' prescription liberandi causa. Sanders disposed of one-half of his half mineral interest in the

land that he had previously reserved to himself on December 23, 1919, thereby leaving vested in himself a one-fourth mineral ·interest. The remaining defendants in the jactitation suit claim to own the other one-fourth mineral interest in the tract of land and trace their titles to Sanders.

The Ohio Oil Company, as the assignee of the oil and gas lease, drilled two oil wells on the property in the year 1922, the first one having been commenced on February 25, 1922, and both wells produced oil in paying quantities until September 1931, when the Company abandoned the lease and removed the derricks and equipment from the property.

On March 26, 1922, the plaintiff, E. A. Goree, and his brother, G. T. Goree, C. W. Sanders, one of the defendants herein, and the remaining defendants or their authors in title signed a division order directing the Standard Oil Company to pay the proceeds accruing from the one-eighth royalty provided for in the mineral lease, to all of the mineral owners. The Company paid to the respective mineral owners, in proportion to their interests, the one-eighth royalty as set forth in the division order throughout the period of oil production from March' 31, 1922, until September 1931. During this time, the plaintiff had actual knowledge that the other parties were receiving their proportionate shares of the royalty accruing to them as mineral owners.

On September 16, 1938, W. P. Baucum, one of the mineral owners, died intestate leaving a widow in community and eight children, one of whom was a minor (now 16 years of age) and his succession was accepted by the widow and children.

No drilling operations whatever were conducted on the land in question from September 1931 through September 1941, in an effort to produce oil, gas, or other minerals and the defendants were completely out of possession of the mineral servitude during that entire period of time.

The following Articles of the Revised Civil Code are pertinent to the issues involved herein:

"Article 3478 [As amended by Act 161 of 1920 and Act 64 of 1924]. He who acquires an immovable in good faith and by just title prescribes for it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party."

"Article 3482. It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription."

"Article 3484. By the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly be-

lieved to be the real owner, provided the title were such as to transfer the ownership of the property."

■ In interpreting Article 3478 of the Revised Civil Code, as amended, in the cases of Palmer Corp. of La. v. Moore, 171 La. 774, 132 So. 229; Sample et al. v. Whitaker et al., 171 La. 949, 132 So. 511; Connell v. Muslow Oil Co., 186 La. 491, 172 So. 763 and Childs v. Porter-Wadley Lumber Co. et al., 190 La. 308, 182 So. 516, we held that the ten years' prescription acquirendi causa was applicable to a mineral servitude in favor of the party who possessed the land in good faith under a just title, and that the running of acquisitive prescription of ten years once started against a major continues against his minor heirs.

In the instant case, the plaintiff and his brother acquired a warranty title to the property on November 1, 1920, from Lewis, "honestly" believing he was the true owner and without any knowledge of the previously recorded mineral lease and servitude. They immediately thereafter went into actual physical and corporeal possession thereof and collected rents until 1923. At that time, a new house was erected on the property and it has been continuously used and occupied by the plaintiff and no one disturbed him in possession thereof from the year 1920 until the present time, except when the drilling and production operations were carried out.

The plaintiff and his brother both testified that when they purchased the prop-

erty in 1920 from Lewis, they thought that they were acquiring and intended to acquire all rights in the land including the minerals underlying it. They relied upon the vendor's warranty and did not have the title to the 20-acre tract in question examined nor did they make or have made any inspection of the public records of Claiborne Parish. They were not informed of and did not know anything about the outstanding lease assigned by Smitherman to the Ohio Oil Company, nor did they have any knowledge nor were they informed of the fact that one-half of the minerals were being claimed by C. W. Sanders, under his previously recorded reservation or deed. The first information they had of any outstanding interest in the minerals was in the year 1923, when they attempted to sell certain mineral rights to a party who informed them that Sanders had a mineral claim.

■ The uncontradicted evidence establishes the fact that the plaintiff and his brother purchased the whole of the property in good faith, "honestly" believing that their vendor was the true owner. They took possession of it without any information or knowledge that there were any outstanding recorded adverse mineral rights, and have had public, peaceful and unequivocal possession of the whole of the property, except the servitude which was exercised by the Ohio Oil Company in its drilling and production operations beginning February 25, 1922, and ending September, 1931, when it abandoned the leased premises and moved its machinery and equipment therefrom. The mere fact that

the mineral rights of the defendants and their authors in title were recorded prior to the time that the plaintiff and his brother acquired the warranty title to the land in 1920, does not make the plaintiff and his brother possessors in bad faith. Childs v. Porter-Wadley ·Lumber Co. et al., supra.

■ It is also clear that under Article 3482 of the ·Revised Civil Code, as interpreted by this Court in Barrow et al. v. Wilson et al., 38 La.Ann. 209, and Brewster v. Hewes et al., 113 La. 45, 36 So. 883, that if possession is commenced in good faith, subsequent knowledge of outstanding rights or subsequent possession in bad faith does not prevent the running of prescription.

The defendants, as plaintiffs in the petitory action, contend that prescription was interrupted by the drilling operations commenced on the property in February 1922, and the operations of the two oil wells subsequent thereto until September, 1931, and, therefore, as far as the mineral servitude was concerned, it was in the possession of the Ohio Oil Company, as lessee of the mineral owners, and not in the possession of the plaintiff and his brother, owners of the land; and that having signed the division order on March 26, 1922, ordering and directing the Standard Oil Company to pay to the respective mineral owners their pro rata share of the royalty under the Smitherman lease assigned to the Ohio Oil Company, and having thereby acknowledged the mineral owner's title or interest, the plaintiff and his brother, subsequent to that date, were possessors in bad faith.

The plaintiff concedes that the drilling and production operations from February, 1922, to September, 1931, interrupted prescription, but deny that. they were possessors in bad faith.

We have not been cited any authority holding that—where a person, under just title, enters possession of land in good faith—subsequent acquired knowledge of outstanding prior recorded rights of others and mere acknowledgment of these rights convert him from a possessor in good faith to one in bad faith. On the contrary, the attorney for the plaintiff has referred us to Article 3482 of the Revised Civil Code and decisions of this Court wherein it is stated that if a party enters into possession in good faith, the fact that he subsequently held possession in bad faith does not prevent prescription from running.

The defendants also rely on Article 3487 of the Revised Civil Code, which provides:

"To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:

"1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.

"2. That the possession shall have been *continuous and uninterrupted,* peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine pos-

sessor, *for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription."* (Italics ours.)

The defendants contend that the plaintiff's possession was interrupted by the exercise of the servitude from 1922 through 1931, with actual production of oil in paying quantities and, therefore, the plaintiff's possession was not continuous and uninterrupted.

The plaintiff counters by stating that he was in continuous and uninterrupted, peaceable, public and unequivocal possession of the land from September, 1931, until this suit was filed on July 27, 1942. In other words, while the plaintiff admits that the defendants and their authors in title had possession and use of their mineral servitude by the drilling and production operations on the property from February 1922 through September 1931, on the other hand, he asserts, the lessee having abandoned the lease and property on the latter date, prescription began to run anew for a continuous and uninterrupted period of ten years.

█ It is our opinion that as the plaintiff's possession began or commenced in good faith and continued under a title translative of property, the prescription of ten years began to run anew when the defendants and their lessee abandoned the property in September, 1931, and failed thereafter to exercise in any way the mineral servitude. This prescription ran continuously and uninterruptedly for a period of more than ten years.

The defendants also cite Article 3520 of the Revised Civil Code, which reads:

"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

The defendants argue that under the above article, the acknowledgment in the division order by the plaintiff and his brother of their mineral title, caused prescription to cease, and that prescription thereafter could not begin to run again.

The plaintiff concedes that the acknowledgment in the division order by his brother and himself of the respective defendants' mineral interests or title in the land under the prior recorded mineral reservation and lease, and the drilling and production operations on the property conducted thereunder interrupted the running of prescription until the production ended and the property was abandoned (Superior Oil Producing Co. et al. v. Leckelt et al., 189 La. 972, 181 So. 462), but insisted that after that date, i.e., September, 1931, the ten year prescription began to run anew.

If the defendants' position were maintained that, once prescription had ceased to run because of the acknowledgment of the right of the person whose title is being prescribed, prescription thereafter cannot start again, it would be impossible for prescription to ever accrue in such a case.

It is our view that the plaintiff's contention is sound and that the defendants' interpretation of the above article is untenable.

The defendants' plea of estoppel is based upon the division order, dated March 26, 1922, signed by the plaintiff and his brother and the various mineral owners, the pertinent parts of which read:

"We, the undersigned, and each of us, hereby declare and agree that we are the owners, in the proportions set out below, of all the oil produced from the C. W. Sanders Farm situated in N½ NW¼ NW¼ of Section 26, Township 23 N, Range 8 W., Parish of Claiborne, State of Louisiana.

"We hereby authorize you to run said oil and until further notice you will pay for all oil taken from said property, as follows:

[Here follows a list of the names of the owners, their addresses and their proportionate shares in the royalty.]

        *        *        *        *        *

"Second: The oil received under the provisions of this division order, shall be paid for, to the owners set out above, at the price quoted by the Standard Oil Company of Louisiana, for the same kind and quality of oil, on the day of the receipt thereof."

In the stipulation of facts, it was agreed that the plaintiff and his brother knew that the proceeds realized from the sale of the oil to the Standard Oil Company was being paid by it to the respective mineral owners in proportion to their holdings under the division order and that this continued from March 26, 1922, until September, 1931, when production ceased and the property was abandoned by the lessee, and its equipment was removed from the premises.

The record shows that the mineral lease was placed on the land by Sanders, the owner, on February 14, 1919, and the reservation of one-half of the minerals was made by him in the sale to Lewis on December 23, 1919, and that the lease and the sale with the reservation were 'properly recorded prior to the time that Lewis, the owner, conveyed the land to the plaintiff and his brother, G. T. Goree, on November 1, 1920. The lessee or his assignee and the mineral owners had a legal right to go on the property under their superior and prior recorded rights to explore the land for oil and gas in 1922, because the lease had not expired and the prescriptive period had not run against the mineral servitude. The division order is simply a statement of the respective legal rights of the various mineral and land owners in the property. Nothing is mentioned about the land owners agreeing to waive accrued prescription or to surrender or forego their rights to plead prescription that might accrue in their favor in the future. The acknowledgment is not accompanied by or coupled with any statement showing any intention of the plaintiff and his brother to waive any prescriptive rights they had or might acquire in the future. The defendants were not led to change their position thereby and refrain from exercising their servitude. The plea of estoppel is, therefore, without merit. Goldsmith v. McCoy, 190 La. 320, 182 So. 519. See also Lewis v. Bodcaw Lumber Co., 167 La. 1067, 120 So. 859; Hightower v. Maritzky, 194 La. 998, 195 So. 518; and La. Del. Oil Properties v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is annulled and set aside; that the converted petitory action of the defendants is dismissed; that the plaintiff's, E. A. Goree's, plea of prescription of ten years acquirendi causa in the jactitation suit is sustained; and that the plaintiff, E. A. Goree, is recognized and confirmed as the owner of the N½ of NW¼ of NW¼ of Section 26, Township 23 N, Range 8 W, less and except a tract of land described as beginning at the northwest corner of Section 26 and running east 272—⅓ yards to form a starting point; thence south 70 yards; thence east 35 yards; thence north 70 yards; thence west 35 yards to starting point, all in Section 26, Township 23 N, Range 8 W, Claiborne Parish, Louisiana.

It is further ordered that there be judgment herein in the jactitation suit in favor of the plaintiff, E. A. Goree, and against all of the defendants therein, ordering the cancellation and erasure of the registration or the recordation of the various mineral deeds to the respective defendants, as fully described and set forth in the plaintiff's petition, and the Clerk of the Second Judicial District Court for the Parish of Claiborne, as Ex-officio Register of Conveyances and Recorder of Mortgages, is authorized to cancel and erase from the records of his office the various mineral deeds and transfers of the defendants, as set forth and described in the plaintiff's petition. The defendants to pay all costs of this suit.

O'NIELL, C. J., concurs in the decree.