ELLIS, Judge.
This is a petitory action filed by the plaintiff, Daniel D. Uter, in which he alleges that he is the owner of and that the defendant, Charles R. Tessier, is in possession of, the following described property :
A certain lot or parcel of ground, situated in that part of the City of Baton Rouge known as Spanish Town, in an unnumbered square, bounded on the North !by Lakeland Drive (formerly Cox’s Alley), on the East by North 8th Street (formerly Gusman Lane), on the South by Boyd Avenue; and on the West by North 7th Street (formerly projection of St. Mary Street) ; said lot being more particularly described on the map made by Henry E. Kleinpeter, C. E. and Surveyor, dated April 24th, 1925, and according to the official map of Baton Rouge by F. F. Pillet, C. E., dated October 21st, 1930 as Lot “I”, fronting fifty-two and one-half (52J4') feet on a private drive, by a depth between equal and parallel lines of Thirty (30') Feet, said lot being bounded on the North by Lot “H”, on the East by Lot 4, on the South by Lot “J”, and on the West by a 20' private drive. *562 Plaintiff further deraigned title to an alleged common author, W. J. Basler.
Answering plaintiffs suit, after having filed an exception of no cause or right of action (not being urged on appeal) defendant denies that the plaintiff was the lawful owner of the property described as Lot “I” hut admits that he traces title to the said W. J. Basler and that he is in possession, and further answering, defendant deraigns title from Basler, and in the alternative defendant alleged that he acquired the property in good faith and under a just title and, therefore, plead the prescription of 10 years.
The trial court rendered a judgment in favor of plaintiff, 'being of the opinion that the plaintiff had the better title and that the defendant had failed to sustain his plea of ten years prescription. Thereafter the District Judge granted an application for a rehearing, hut after considering the application again rendered judgment in favor of plaintiff.
Defendant has appealed.
In view of the conclusion which we have reached as to the plea of 10 years’ prescription, it is unnecessary to pass upon the question of superiority of title between the parties. However, a deraignment of their respective titles is necessary.
The record shows that the plaintiff purchased from Ovide R. Leonard on Feb. 3, 1948 the property hereinabove described, and that Ovide R. Leonard claimed to have purchased the same property by an act of sale dated April 9, 1940 from Mrs. Cora B. Carney, however, the description in that act of sale reads as follows:
A certain lot or parcel of ground in that part of Baton Rouge known as Spanish Town adjoining on the north the lot firstly above described measuring fifty-two and one-half (52y¿) feet front on a twenty foot private drive by a depth of thirty (30') feet, being the western portion of Lot No. Four (4) as shown on the map made by H. E. Kleinpeter, C. E., April 24th, 1925, bounded North by Lot 5, east by the balance of said Lot 4, south by the prpperty firstly above described and west by the said private drive, being a part of the same property acquired by me, Vendor at Sheriff’s sale from W. J. Basler, on July 29, 1933 by act of record in Conveyance Book 272, folio 416 of the Conveyance Records of the Parish of East Baton Rouge, State of Louisiana.
A mere reading will reveal the difference in the descriptions of the property as acquired by the plaintiff and Leonard. In the Leonard description it is stated that the property is in the west portion of Lot 4 as shown on a map by H. E. Kleinpeter dated April 24, 1925, that it is bounded north by Lot 5, East by the balance of said Lot 4. This map has been offered in evidence and Lot “I” is not in Lot 4 nor has it ever been bounded north by Lot 5 nor east by the balance of Lot 4.
Mrs. Cora B. Carney, from whom Leonard claimed to have acquired the property, bought same at Sheriff’s sale on July 29, 1933 as a result of a foreclosure against W. J. Basler and the property in this sale is described as follows:
A certain lot or parcel of ground, situated in that part of the City of Baton Rouge known as Spanish Town, adjoining on the north the lot firstly above described measuring fifty-two and one-half (52y2') feet front on a twenty foot private drive by a depth of thirty (30') feet, being the eastern portion of Lot No. Four (4) as shown on the map made by H. E. Kleinpeter, C. E., April 24, 1925, bounded North by Lot Five (5), East by the balance of said Lot Four (4) South by the property firstly above described and west by the said private drive.
The property in the mortgage foreclosed bears this same description. It will be noted that in Mrs. Carney’s deed from the Sheriff the property is described as being in the eastern portion of Lot 4, thus being different from the two previous descriptions.
The maps introduced in evidence conclusively show that Lot “I” is separate and apart from Lot 4, and joins Lot 4 to the west, and that it has never been a part of Lot 4 but is the result of a resubdivision of Lots 2, 3, 5 and 6 and unnumbered lots in an unnumbered square bounded by Coxes’ Alley, Gusman’s Lane, Boyd Avenue and *563 St. Mary Street, and the maps further reveal that Lot “I” originally came out of Section 91 while Lot 4 came out of Section 90.
It cannot be disputed that the defendant’s authors in title, being Basler Realty Company, Inc., who acquired from W. J. Bas-ler November 18, 1925, and Daspit & Huck-aby who acquired on September 8, 1931 from Basler Realty Co., Inc., and Mrs. Azeline H. Turner who acquired on September 21, 1936 from .Daspit & Huckaby, acquired .Lot “I” by a proper description as shown by the maps introduced in evidence. In other words, there can be no question as to the description by which the defendant’s .authors in title acquired.
There is no proof in the record that plaintiff or his authors in title ever exercised possession as to Lot “I”. There is not one scintilla of evidence that Mrs. Carney, from the time she purchased it in 1933 until she sold it in 1940, ever claimed the ownership of Lot “I” or that she ever questioned the possession or title of Daspit & Huckaby, one of the defendant’s authofs in title.
We are of the. opinion that the plea of prescription of 10 years under Articles 3479 and 3487 of the LSA-Civil Code of Louisiana should be sustained. These Articles read as follows:
“Article 3479. Essential elements— Ten years prescriptive period — Immov-ables. — To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
“4. And finally an object which may be acquired by prescription.”
“Article 3487. Possession must be adverse — Essential elements — To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
“1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete á possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
“2. That the possession shall have been continuous and uninterrupted peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription.”
It appears that W. J. Basler was engaged in the real estate business and resubdivided certain property as shown by the Kleinpeter map of April 24, 1925 referred to in the descriptions of the property in question, and that he mortgaged certain property which is above described in reference to the sale from the Sheriff pursuant to the foreclosure to Mrs. Cora B. Carney. The record further reveals that Daspit and Huckaby had done some legal work for Basler who was unable to pay in cash and told them that Lot “I” was the only piece of property that he had not mortgaged and that the Basler Realty Company would transfer this lot to them in order to settle the account, which it did by a proper description on September 8, 1931. There is no hint in the record that Basler was dishonest and, therefore, we take it that we should accord to Basler good faith in making the statement to Huckaby and in transferring the property to Daspit and Hucka-by, in other words, that Basler did not think that the property was covered by the mortgage. After Daspit and Huckaby acquired the property they paid the taxes and kept the grass cut and attempted to sell it, which they accomplished on Sept. 21, 1936 when they sold the property to Mrs. Azeline H. Turner.
*564 The record shows that Mrs. Turner, around 1937 or shortly after she acquired the property, gave permission to her mother to make a garden on Lot “I”, and that she paid the taxes on the property during the entire time she owned it and kept the grass cut. Mrs. Turner testified that her mother used the property for awhile, and the record shows that around 1939 or 1940 the defendant was given permission to use the property as a garden which he did almost continuously, except for one or two years, up until he purchased the property on March 4, 1950. It is shown that the defendant had a garden upon the property when Leonard claims that he bought it on April 9, 1940. There can be no question but that Mrs. Turner took actual corporeal possession of Lot “I” after she purchased it and that she was in good faith and that her possession was peaceable, quiet and unequivocal. It is true that some years after she purchased the property she heard that Leonard claimed it, but at no time did he talk to Mrs. Turner nor actually dispute her ownership or possession. When Leonard sold the property to the plaintiff, he sold it without warranty even as to the return of the purchase price. The plaintiff admitted that he never talked to Mrs. Turner and did not recall ever seeing her, although he admits in his testimony that he knew that Mrs. Turner had possession and claimed the ownership of this lot when he purchased it.
It is our opinion that the requirements of the law were proven to have been satisfied by the record in this case, in other words, there was good faith on the part of the defendant and his authors in title when they purchased this property. We realize that the district court was of the opinion that the defendant was in bad faith because he knew or had heard of the adverse claim of Leonard at the time he purchased, however, from the record we are convinced that he actually believed that Mrs. Turner had a good title to the property, which is the real basis of good faith. Knight v. Berwick Lumber Co., 130 La. 233, 57 So. 900.
It is also clear that under Article 3482 of the LSA-Civil Code as interpreted by this Court in Barrow v. Wilson, 38 La. Ann. 209, and Brewster v. Hewes, 113 La. 45, 36 So. 883, 885, that if possession is commenced on good faith, subsequent knowledge of outstanding rights or subsequent possession in bad faith does not prevent the running of prescription.
In Brewster v. Hewes, supra, it was ■stated:
“The law applicable to the subject is that he who acquires the ownership of an immovable from one whom he believes to be the owner, by a title which would be sufficient to transfer the ownership if derived from the owner, and who holds continuous, uninterrupted, peaceable, public, and unequivocal possession thereof, as owner, 'prescribes for it in ten years’; that good faith is always presumed in matters of prescription, and that he who alleges bad .faith in the possessor must prove it; and that it is sufficient if the possession has commenced in good faith, the fact that it is afterwards held in •bad faith, whether by the original possessor or his successor in title, not affecting the prescription. [LSA-] Civ. Code, arts. 3478, 3479, 3481, 3482, 3484, 3485, 3486; Barrow v. Wilson, 38 La.Ann. 209; Pattison v. Maloney, 38 La.Ann. 885; Wells’ Ex’r v. Wells, 30 La.Ann. 935; Meibaum v. Brennan, 49 La.Ann. 580, 21 So. 853; Devall v. Choppin, 15 La. 566; Templet v. Baker, 12 La.Ann. 658.”
It is therefore ordered that the judgment of the District Court be and the same is hereby reversed and that the plea of ten years prescription is hereby sustained and the plaintiff’s suit dismissed at his cost, and that, accordingly, there be judgment in favor of the defendant, Charles R. Tessier, and against the defendant, Daniel D. Uter, decreeing said Charles R. Tessier to be the lawful owner of the following property:
A certain lot or parcel of ground, situated in that part of the City of Baton Rouge, known as Spanish Town, in an unnumbered square, bounded on the North by Lakeland Drive (formerly Cox’s Alley) ; on the East by North 8th Street (formerly Gusman Lane); on the South by Boyd Avenue; and *565 on the West by North 7th Street (formerly projection of St. Mary Street) ; said lot being more particularly described on the map made by Henry E. Kleinpeter, C. E. and Surveyor, dated April 24th, 1925, and according to the official map of Baton Rouge by F. F. Pillet, C. E., dated October 21st, 1930; as Lot “I”, fronting Fifty Two and One-half (52%') Feet on a private drive, by a depth between equal and parallel lines of Thirty (30') feet; said lot being bounded on the North by Lot “H”; on the East by Lot 4; and on the South by Lot “J”; and on the West by a 20' private drive.