LOTTINGER, Judge.
This is a suit, filed in the year 1951, to set aside a sheriff’s sale dated December 29, 1934 made in accordance with a judgment ordering a partition by licitation. A plea of ten years acquisitive prescription was sustained by the Lower Court and the matter is now before us on appeal taken by various of the plaintiffs.
While the record is voluminous, the facts and issues presented are relatively simple and may be fairly stated as follows:
The land in question (located in the Bayou L’Ourse area of Lafourche Parish) was acquired many years ago by Laurence Cheramie who was then married to Celeste Terrebonne. These parties died leaving a number of children, who, in turn, left a considerable number of heirs. One Frederick Scully, now deceased, an inhabitant of the area, purchased the undivided interests owned by some of these heirs and in the year 1928 brought suit for a partition by licitation. This proceeding resulted in a judicial sale at which the plaintiff (Scully) was the purchaser.
It later developed that Scully’s attorneys had failed to make all of the Cher-amie heirs parties to the proceedings. Various of these contacted the defendant Harvey Peltier, attorney, with a view towards setting aside the sale. It seems that John Pitre, one of the heirs, acted as spokesman for the family and endeavored to secure contingent fee contracts whereby Mr. Peltier, if successful in setting aside the partition, would receive an undivided one-half of the respective parties’ interests. Suit was filed (No. 6854 of the docket of the Lower Court) and, though vigorously defended, terminated in judgment favorable to Mr. Peltier and his clients. Subsequently, various of the heirs executed the agreed upon conveyance of one-half of their interest to Mr. Peltier. Some of the heirs, at the same time, conveyed their remaining one-half interest to Mr. Peltier and John Pitre attended to the execution of these instruments.
It seems that at this time the land was suitable only for trapping and, because of the multiplicity of co-owners, the operation of the lands for trapping was made difficult. Consequently, Mr. Peltier decided to institute a suit for a partition. The matter was turned over completely to a Mr. Hubert Lafargue, who was then a young attorney in the employ of Mr. Peltier. It appears that Lafargue made no title examination as such but consulted frequently and for a period of approximately a year with John Pitre and other members of the family, all in an attempt to accurately work out the family history of Laurence Cheramie. The conveyance and other public records were examined from time to time also. The suit was finally filed under No. 7230 of the docket of the Lower Court and all persons whose rights were then known were named .and cited. After due proceedings judgment was rendered in Mr. Peltier’s favor and the property sold at public auction as aforesaid on December 29, 1934. The *870 purchasers were Mr. Peltier and Mr. Scully, who purchased in undivided proportions and who subsequently entered into an amicable partition in kind.
The surface of the tract received by Mr. Scully is now owned by his two sons, William and Robert F. Scully. The minerals underlying same are owned by the latter together with the Superior Oil Company. Mr. Peltier subsequently conveyed :an undivided interest in the tract taken by him to John Pitre and later conveyed another undivided interest to the latter’s children. The property is subject to a mineral lease held by Humble Oil and Refining Company and Shell Oil Company, under which Wylmer I. Pool, Berkshire Oil Company and J. R. Franket own overriding royalties.
The record reflects that one of the children of Laurence and Celeste Cheramie was Romandy (or Romandie) Cheramie who married Louis Pitre. She died, leaving among her heirs a minor daughter named Florida Pitre. Subsequent to the death of Romandy, Louis Pitre remarried and, at the time of Florida’s death, two children, Noemie and Boita Pitre, had been born of the subsequent marriage. The latter, therefore, inherited a small interest in the property from Florida anil the basis of the attack on the partition proceedings is the failure to have joined or cited them or their heirs.
As will be pointed out in more detail later on in this opinion, the rights of these parties were not known at the time of the institution of the partition proceedings now-under attack. Ironically, in the middle of the trial, on cross-examination of plaintiffs’ witnesses, it was discovered that plaintiffs themselves had failed to cite certain of the heirs in this action and a seventh supplemental petition was filed citing them after a great deal of testimony had already been introduced into the record.
Additionally, it is alleged that the heir3 ■of one Haize (spelled various ways in the record) Cheramie should have been made parties to the partition suit (No. 7230), this averment resting on an interpretation of the description in a deed by Haize Cheramie to Theogene Cheramie dated March 8, 1926, it being plaintiffs’ position that the description covered only a portion of the property, thus leaving outstanding interests in the heirs of Haize Cheramie as to the portion of the property not covered who were not made parties to the suit. This point will be treated later in the discussion of good faith of Peltier and Scully.
The conditions necessary to perfect a ten year prescriptive title are set forth in LSA-C.C. Art. 3479 as follows:
“To acquire the ownership of im-movables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
“1. Good faith on the part of the possessor.
“2. A title which shall be legal, and sufficient to transfer the property.
“3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
“4. And finally an object which may be acquired by prescription.”
A legal title is termed in LSA-C.C. Art. 3483 as “just title” and the latter term is defined by LSA-C.C. Arts. 3484, 3485 and 3486 as follows:
“By the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property.”
“And in this case, by the phrase transfer the ownership of the property, *871 we understand not such a title, as shall have really transferred the ownership of the property, but a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners, such as a sale, exchange, legacy or donation.
“Thus, prescription could not be acquired under a title resulting from a lease or loan, because these contracts do not transfer the ownership of the property.”
“It is necessary besides:
“1. That the title be valid in point of form; for if the possession commenced by a title void in that respect, it can not serve as a foundation for prescription.
“2. That the title be certain; thus, every possessor, who can not fix exactly the origin of his possession, can not prescribe.
“3. That the title be proved; for as it consists in a fact, it is not presumed, and every man who founds his title on a written instrument must produce it, or prove the contents, if it be lost.”
The plaintiffs argue that the sheriff’s sale here under attack is not a “just title”, citing as authority the case of Martin v. Carroll, La.App., 59 So.2d 158. While it is true that our brethren of the Second Circuit did reach such a conclusion in the cited case, it is our belief that they fell into error in so doing. An examination of the opinion shows that while the court cited a number of cases in support of its conclusion, only one of these (People’s Bank of New Orleans v. David, 49 La.Ann. 136, 21 So. 174) involved a judicial partition and, in that case, there was no question of “just title” involved. The law on this point, we believe, has been correctly expressed by our Supreme Court in the case of Heirs of Ledoux v. Lavedan, 52 La.Ann. 311, where it was squarely held, at page 356, 27 So. 196, at page 214, that a judicial sale made to effect a partition at which one of the former co-owners acquired was, in the words of the Court, “a ‘just title,’ sufficient, when accompanied by possession, to constitute a basis for the prescription acquirendi causa.” The court in the cited case went on to sustain the plea of ten year prescription based on such title. The ruling of the Court has not been since questioned, as far as we can determine, and we feel that it must be accepted as the law of the state today.
According to LSA-C.C. Art. 3486, not only must the title be “translative of property” but it also must be “valid in point of form”, “certain” and “proved”. There is certainly no invalidity here as to form nor is there any question of its having been “proved”, it being in writing, in authentic form and offered and received in evidence without objection. There remains, then, the question of “certainty”.
The sheriff’s sale is attacked by plaintiffs as being uncertain for the reason that the East one-half of the Northwest Quarter of Section 30, Township 18 South, Range 22 East was described therein as the “E1/2 of SWi4” of said section. This is obviously, however, merely a clerical error as the proceedings leading up to the sheriff’s sale admittedly contain the correct description. And, in addition, the sheriff’s sale makes reference to the recorded source of title which must be read together with the description in the deed. Lawler v. Bradford, 113 La. 415, 37 So. 12; Tennent v. Caffery, 170 La. 680, 129 So. 128; Emerson v. Cotton, 209 La. 1003, 26 So.2d 16.
Next presented for consideration is the question of good faith. LSA-C.C. Art. 3481 provides that:
“Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.”
*872 and, LSA-C.C. Art. 3482 provides that:
“It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in had faith, that shall not prevent the prescription.”
From the above it is clear that at issue here is the good faith of Messrs. Peltier and Scully as of the time of the execution of the sheriff’s sale in their favor on December 29, 1934. Knowledge of adverse claims thereafter made known to, them or to a subsequent purchaser from, them, would not interfere with the running of prescription. Devall v. Choppin, 15 La. 566; Brewster v. Hewes, 113 La. 45, 36 So. 883; Goree v. Sanders, 203 La. 859, 14 So.2d 744. Good faith at the time of the purchase being presumed, the question is whether plaintiffs have sustained the burden of proving to the contrary. There being nothing on the face of the sheriff’s sale or in the proceedings leading thereto which would show or tend to show the failure to cite any co-owners, the charge of bad faith must necessarily rest on circumstances outside the deed and the proceedings leading thereto.
There can be no doubt that neither Mr. Peltier nor Mr. Scully had actual knowledge of the failure to cite any co-owner in Suit No. 7230. Both Mr. Peltier and Major Lafargue testified that had they known of any additional co-owners they would most certainly have made them parties to the suit. There was, indeed, no advantage whatever in not joining them, and making them parties to the suit could only have resulted in benefit to Mr. Peltier. We accept it as a fact, therefore, that neither Mr. Pel-tier nor his attorney, Mr. Lafargue, had any actual knowledge of the existence of such parties. Nor is there any evidence whatever that Mr. Scully had any such knowledge.
The plaintiffs seek to impute knowledge to Mr. Peltier because he had alleged in the earlier suit which he had filed (No. 6854) that Florida Pitre had survived her mother, Romandy Cheramie Pitre, which allegation, it is urged, was sufficient to put Mr. Peltier on inquiry as to possible heirs of Florida Pitre. Also, the plaintiffs seek to impute to Mr. Peltier such knowledge as John Pitre might have had as to the existence of children of his father’s third marriage, the theory being that John Pitre was Mr. Peltier’s agent and that his knowledge, as such, was imputed to the principal. Plaintiffs also seek to impute knowledge to Scully, although there is no assertion of any relationship which existed between him and Pitre.
It must be remembered here, as pointed out to some extent earlier, that when it was decided to have the property partitioned by licitation, Mr. Peltier had in his employ Mr. Hubert Lafargue, former District Attorney of the Seventeenth Judicial District and presently serving as Major on active duty with the United States Army. The entire matter was turned over to Mr. Lafargue, who acted as Mr. Peltier’s attorney and who, as such, made the necessary investigation and decided against whom to file suit. Mr. Peltier took no part whatever in making these decisions.
It should be remembered that at this time John Pitre had parted with his entire interest in the property but was nevertheless still interested in it as he wanted to obtain trapping privileges if an end could be put to the co-ownership status. It was only logical, therefore, considering the large number of people involved, that Mr. La-fargue would look to Mr. Pitre as a source of information regarding the family history.
It should also be remembered that John Pitre was not the only member of the family who furnished information to Mr. Lafargue. Elie Pitre and Odalie Kieff furnished such information as did Burke Pitre. All these persons would come to Mr. Lafargue’s office and give him such information as they had. Mr. Lafargue, in turn, would then check the conveyance records to ascertain whether the parties in question had alienated the interest held *873 by them. While it is true that John Pitre furnished most of the information and did most of the work, it is equally true that neither Mr. Peltier nor Mr. Lafargue had a right to, sought to, or did in any way control Mr. Pitre or the other persons furnishing information either as to the information to be furnished or the means of obtaining it. Certainly Mr. Pitre did not purport to be the agent of anyone in presenting the family information to Mr. Lafargue. He acted independently with the hope of sometime realizing a benefit for his efforts by being able to, in the future, obtain trapping leases.
It is well settled that the burden of proving an agency relationship rests on the one alleging it. Spies v. Caruso, 1 La.App. 544; further, if the alleged agent is not in fact an agent but an independent contractor, no knowledge of or notice to such independent person is the knowledge of or notice to the supposed principal. Sterbcow v. Peres, 222 La. 850, 64 So.2d 195.
The record does not convince us that John Pitre was Harvey Peltier’s agent. He was, undoubtedly, a friend of long standing and was of considerable assistance to Mr. Lafargue in his preparation of the suit. This, without more, however, does not make him an agent and hence any knowledge which he may have had with respect to those heirs unknown to and unnamed by Mr. Lafargue was not imputable to either him or Mr. Peltier.
As there is no doubt but that the property is an “object which may be acquired by prescription”, there remains the question of possession. By stipulation of counsel filed June 24, 1957 it was set forth that Peltier and Scully, after having purchased the property and after having amicably partitioned it, either themselves or through trapping lessees, did the following:
“(a) Annually trapped the lands so alióted, such trapping being conducted systematically with the view of deriving as much revenue therefrom as possible consistent with conservation practices.
“(b) Dug trenasses and ditches thereon, and annually cleaned and! maintained the trenasses and ditches thereon.
“(c) Annually prepared said property for trapping where necessary by burning the marsh or otherwise.
“(d) Posted ‘no trespass’ signs around the boundaries of said lands at frequent intervals and annually maintained such signs.
“(e) Regularly patrolled said property to keep it free of trespassers.
“(f) Excluded from said lands peaceably all persons not having permission of Harvey Peltier or Frederick Scully, or their respective assigns, to be thereon.”
It was further admitted that the property is susceptible of useful possession only for the purpose of trapping fur-bearing animals and prospecting for and producing minerals and that Peltier and Scully and their assigns were never disturbed, either physically or legally in their operations on the lands. All taxes due were paid, no> attempt to hide their operations was made and all instruments affecting the property were placed of record. The possession of defendants Peltier and Scully was hostile, adverse and for a period in excess of ten years. We conclude, for the reasons aforesaid, that the plea of ten year acquisitive prescription was valid and affirm the ruling of the Lower Court to that effect.
The cases of Dinwiddie v. Cox, La.App., 9 So.2d 68; Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369; and Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852 are relied on by plaintiffs for the proposition that although a proposed purchaser is not bound to investigate title, if he does investigate he is bound by the facts disclosed by the investigation, and .is. also bound to make such further inquiry *874 as would a prudent man under the circumstances. These authorities are not applicable here for the reason hereinafter shown.
Admittedly, Mr. Peltier knew, either actually or presumptively, of the fact that Romandy Cheramie Pitre had died leaving surviving children, that one of these was Florida Pitre and that she, in turn, had died a minor, without issue. It was also known that she was survived by her father and various brothers and sisters, children of her mother, Romandy Cheramie Pitre. It was not known, however, (and this is the point of differentiation) that at the time of Florida’s death Louis Pitre had already had two children by a third marriage.
Obviously this fact was not related to Mr. Peltier in 1932 when Suit No. 6854 was filed for the absence of these heirs would have been a ground of attack just as was the absence of Louis Pitre, whose ownership was alleged to flow from his daughter Florida. It is significant that the judgment in this suit recognized the allegations of the petition as being true.
When time came to prepare Suit No. 7230, Louis Pitre had by then sold his entire interest to Mr. Peltier, as had various brothers and sisters of the full blood, including John Pitre and it was, therefore, unnecessary to join Louis Pitre. Mr. Lafargue, who had spent a year in preparation, knew only what had been known to Mr. Peltier and knew nothing which would have warranted further investigation. The testimony adduced at the trial and the judgment subsequently rendered was in conformity with the allegations of the petition.
Counsel for plaintiffs comment in their brief on the failure of the trial judge to make any finding of fact with regard to John Pitre’s good faith. Under our appreciation of the law this was unnecessary. LSA-C.C. Art. 3482 provides that:
■“It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription.”
The above quoted article was discussed in the early case of Devall v. Choppin, 15 La. 566, the syllabus of which reads: ,
“If the possession has commenced in good faith, and if it is afterwards held in bad faith, that will not prevent prescription, even if the possessor’s title was fraudulent, and he knew another person had a better title.”
Later, in Barrow v. Wilson, 38 La.Ann. 209, the same rule was followed, the syllabus therein reading as follows:
“If the possession begins in good faith, the right of pleading the prescription of ten years is not affected or impaired by the fact that the possession may subsequently have been in bad faith.”
The above two authorities were cited with approval by the Court in Brewster v. Hewes, 113 La. 45, 36 So. 883, 885, wherein the Court held:
“ * * * that it is sufficient if the possession has commenced in good faith, the fact that it is afterwards held in bad faith, whether by the original possessor or his successor in title, not affecting the prescription.” (Emphasis supplied.)
Later in the case of Vance v. Ellerbe, 150 La. 388, 90 So. 735, at page 738, the Supreme Court of Louisiana held as follows :
“The record shows that S. J. Zeigler was the purchaser at the partition sale, on December 12, 1891, and that he was entirely familiar with plaintiff’s mental incapacity; so that, although his title was regular and translative of property on its face, he was not a purchaser in good faith, and prescription did not begin to run during his own-nership and possession. On January *875 18, 1897, the property in contest was sold under judgment of court at syn-die’s sale in the case of S. J. Zeigler v. His Creditors, and bought in by one Peter J. Trezevant, who possessed it until June 30, 1900, when it was sold to the Huron Land Company. There is nothing to show that he was aware of the irregularities attaching to the partition sale, and under express provision of the Code is presumed to have possessed in good faith; and, his title being translative of property in form, prescription commenced to run from the date of his acquisition. The Huron Land Company sold to T. M. Yar-brough on March 10, 1902, and the latter to Clarence Ellerbe February 27, 1907, and Ellerbe sold to A. H. Leonard May 13, 1912, from whom defendant inherited the property in 1917. Conceding that Trezevant’s vendees, Huron Land Company and Yarbrough, were in bad faith, which does not appear to be sustained by the record, this would not, in itself, have prevented the running of prescription, for the reason that it had validly commenced under the possession of Trezevant. C. C. Art. 3482; Brewster v. Hughes [Hewes], 113 La. [45], 51, 36 South. 883.”
The Brewster and the Barrow cases were both cited with approval by the Supreme Court in Goree v. Sanders, 203 La. 859, 14 So.2d 744 and were cited and relied on by us in the case of Uter v. Tessier, La.App., 61 So.2d 561.
We have heretofore pointed out that the possession of Mr. Peltier commenced in good faith. In view of the above referred to authorities it is clear that subsequent possession by him or others with him in bad faith would not affect the running of ten year acquisitive prescription and, therefore, the question of good or bad faith on the part of Mr. Pitre is immaterial and need not be passed upon.
By way of supplemental brief counsel for plaintiffs has urged an additional ground which he contends convicts the defendants, Peltier and Scully, of an additional element of bad faith which has been founded upon the argument that by the introduction in evidence of the Haize Cheramie deed in Suit 7230, the two defendants knew or should have known that on its face .the deed did not divest Haize Cheramie of all of his interest in the land in question, which is located in Sections 59, 30, 29, 7 and 10, and, therefore, the two defendants were fully apprised of the fact that the heirs of Haize Cheramie were still vested with an undivided interest in the property not allegedly transferred as shown on the face of the deed.
The deed from Haize Cheramie to Theo-gene Cheramie contains the following description of property, to-wit:
“All of his undivided titles, rights and interest to and unto a certain tract of land situated in the Parish of La-fourche, State of Louisiana, and situated in the Bayou L-Ours section of the Parish of Lafourche, on the left descending bank of Bayou Lafourche, at about forty-five (45) miles below the Town of Thibodaux, which land is bounded by the lands of Sabatier and Cantrell, now or formerly. The vendor having acquired his interest in the afore described tract of land from his grand-father by inheritance. His grandfather, the late Laurence Chera-mie, having acquired the afore described tract of land from the State of Louisiana, due to the non-payment of the taxes thereon, by G. N. Todd, (See C.B. Page 19 Folio 331. Parish of Lafourche).”
It is to be noted that in the description contained in the above deed, supra, it refers to a deed in Folio 331, page 19, Parish of Lafourche. The document referred to as being in Folio 331 page 19 has been introduced by plaintiffs and is a certificate *876 of .redemption of forfeited land dated Oct. 20, 1879, and covers the tract of land described as follows:
“No. 1938. A certain tract of land, situated on Bayou L’Ours, Parish of LaFourche, on the left descending bank of Bayou LaFourche at about 45 miles below the town of Thibodeaux bounded by the lands of Sabatier and Cantrell.”
Counsel for plaintiff has divided the lands in question in this suit into Tract A, which includes the lands in Sections 59, 30 and 29; Tract B which includes lands located in Section 7; and Tract C which includes lands located in Section 10.
He argues that the .real import of the Haize Cheramie deed is that it does not describe all of Tract A, B and C. Further that he cannot see under any possible interpretation that the deed from Haize Chera-mie to Theogene Cheramie could be construed to apply to Tracts B and C. Further that under the rules of construction any ambiguity in a deed should be construed against the vendor, plaintiffs-appellants have averred that the Haize Chera-mie deed included all of Tract A, rather than just the “Todd tract” in Section 59, and consequently, the plaintiffs, as co-heirs of Theogene Cheramie have an undivided interest in all of Tract A rather than a portion of it.
In considering plaintiff’s position and argument it must be remembered that they are attempting to charge Peltier and Scully with bad faith by virtue of the introduction of the Haize Cheramie deed because they say that it only covered part of the property, and was notice on its face to the defendants, and because of this they were fully apprised by this deed that the heirs of Haize Cheramie still owned an interest in some of the land in question. We cannot agree with plaintiffs contention that the description in this deed and the description in the reference made in the deed is sufficient to limit the effect of the description therein to only Tract A. In order to know exactly what lands were intended to be conveyed, under this description in the Cheramie deed, it would be necessary for a title examination which was not done, and for the introduction of testimony. The description is not clear and does not on its face eliminate Tracts B and C as being included therein. Using plaintiffs’ rule of construction as to ambiguity in the deed being construed against the vendor, unless otherwise shown by proof the deed would be presumed to cover all of the land in question.
We are in accord with the statements and argument of counsel for the defendants made in his brief as follows:
“A comparison of the above description with the Haize Cheramie deed readily shows that the reference does not, in fact, limit the Haize Cheramie deed to any particular portion of the Laurence Cheramie Tract. Accordingly, even had Major La-fargue examined the reference deed he would not have found anything to affect the description in the Haize deed, and the reference cannot affect the good faith of Mr. Peltier.
“So much for the reference. But plaintiffs say that, even without the reference, the remainder <?f the description in the Haize deed restricts its application to the main body of the Laurence Cheramie Tract, since such Tract was composed, in addition to the main body, of two small, non-contiguous properties to the south. Plaintiffs appear to assume that it was the burden of defendants to prove the boundaries of the Laurence Cheramie Tract and that because the record does not establish that the named adjoiners of Sabatier and Cantrell enclosed the entire property, Mr. Peltier is in legal bad faith. This argument contains its own answer.
“If plaintiffs wished to charge bad faith on the basis of this description it was incumbent on them first, to prove, by proper showing, that the calls for the adjoiners of Sabatier and Cantrell necessarily excluded the non-contiguous properties, and, sec *877 ond, to establish that any mistake of fact in such .regard necessarily destroyed Mr. Peltier’s good faith. As to the first, plaintiffs did not set out to prove, and failed to prove, that the adjoiners of Sabatier and Cantrell did not ‘now or formerly’ describe the entire Laurence Cheramie tract; all that was proved was that, at one time, Sabatier did in fact bound the main body of the Laurence Cheramie Tract on the North and that, at one time, Cantrell owned a part of the main body of the Laurence Cheramie Tract; the other facts are left to conjecture. As to the second, if mistake there was, it was one of fact, which could only have been determined by making a title examination, not only of the Laurence Cheramie Tract, but of all the surrounding properties'. Major Lafargue did not purport to make a title examination and the failure so to do is not evidence of bad faith. Cr. Bruce v. Cheramie, 231 La. 881, 93 So.2d 202; Land Development Company v. Schultz, 169 La. 1, 124 So. 125.
“The situation here is, therefore, that there was nothing in the deed’s four corners to place Mr. Peltier (through Major Lafargue) on notice that a restriction was intended, while there was ample evidence in the description to show that the vendor was dealing in his hereditary rights in the Laurence Cheramie property. If ambiguity existed, Major Lafargue was, as are plaintiffs, entitled to take into consideration the rule of construction urged by plaintiffs (Supp.Br. p. 2), and construe the ambiguity against the vendor.”
In addition it is equally true that in Suit No. 7230 wherein the deed from Haize Cheramie to Theogene Cheramie was introduced for the very purpose of proving title to the entire property in question the judgment rendered in that suit treated the deed as covering the entire Laurence Chera-mie Tract. We therefore find no merit in the plaintiff’s argument that Peltier and Scully were in bad faith because they were fully apprised by the introduction of the deed from Haize Cheramie to Theogene Cheramie in evidence in Suit No. 7230 that the Haize Cheramie heirs were still vested with an undivided interest in the tracts B and C. No one could be apprised from the description in the deed or in the reference referred to therein that it did not cover the entire Laurence Cheramie tract. On the ground urged we hold that it does not convict Peltier and Scully of bad faith.
It is our conclusion, for the reasons assigned, that the judgment appealed from is correct and it is, therefore, affirmed.
Judgment affirmed.