289 So.2d 194 (1973)
Leo BANKS et al.
v.
James A. JOHNS et al.
No. 9605.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
*195 John Dale Powers, Baton Rouge, for appellants.
William R. Aaron, Baton Rouge, for appellees.
Before LANDRY, ELLIS and PICKETT, JJ.
ELLIS, Judge.
This is a suit by the widow and heirs of Ben Banks, Sr. to rescind the sale of property made by Mr. Banks to Joseph A. Gladney on November 27, 1967. The defendants are Mr. Gladney and James A. Johns, to whom Mr. Gladney sold the property on November 30, 1967. After trial on the merits, judgment was rendered in favor of plaintiffs and against Mr. Gladney for $7,200.00, and dismissing the suit as to Mr. Johns. From that judgment, Mr. Gladney has appealed to this court.
Ben Banks, Sr. was, at the time of the sale, a 71 year old, illiterate negro man. On the night of November 24, 1967, he shot his wife in the face and was arrested and placed in jail, charged with attempted murder. On November 27, 1967, Ben Banks' brother posted bond and took him to see Mr. Gladney, an attorney-at-law. Mr. Gladney agreed to represent him for a fee of $2,500.00.
*196 Mr. Banks had no money, but was the owner of 22 lots of ground in Scotlandville. Mr. Banks agreed to transfer 10 of these lots to Mr. Gladney, at $250.00 per lot, to satisfy the fee, with Mr. Gladney assuming the paving liens totalling about $4,150.00. The act of sale was passed at once, reciting a $2,500.00 cash consideration. Mr. Gladney gave his check for $2,500.00 to Mr. Banks, who endorsed it and returned it to Mr. Gladney.
At some point during the same day, Mr. Gladney contacted Mr. Johns. Mr. Gladney testified he wanted to see if Mr. Johns would buy his ten lots. Mr. Johns testified that Mr. Gladney told him that Ben Banks had some lots to sell. In any event, Mr. Johns came to Mr. Gladney's office, and, on the same day, an act of sale to Mr. Johns was passed, conveying 12 lots of ground for a cash consideration of $3,000.00. Mr. Johns testified that he wanted to buy the other ten lots as well, and that Mr. Gladney agreed to wait a few days to give him a chance to arrange financing. Three days later, Mr. Gladney transferred the ten lots to Mr. Johns for a cash consideration of $2,500.00, with Mr. Johns assuming the paving liens.
On April 1, 1968, Mr. Banks, represented by Mr. Gladney, was tried on a reduced charge of aggravated battery of his wife and was found not guilty by reason of insanity. He died on December 4, 1970. This suit was brought by his widow and heirs on November 23, 1971.
Plaintiffs allege a number of grounds for the invalidity of the sale. First, they allege the sale from Mr. Banks to Mr. Gladney and the sale from Mr. Gladney to Mr. Johns are simulations. Alternatively, they allege that Mr. Banks was mentally incompetent, and that he was induced to sign the sale by fraudulent means, not knowing what he was doing. In the further alternative, they allege the sale from Mr. Banks to Mr. Gladney was invalid for lesion beyond moiety. They further claim that Mr. Gladney acted as agent for Mr. Johns in the sale, and that he was a party interposed for the purpose of defeating plaintiff's right to a rescission thereof.
In his written reasons for judgment, the district judge found the two sales to be separate transactions, and that Mr. Gladney acted neither as agent nor as an interposed party for Mr. Johns. He found that the sale to Mr. Gladney was not a simulation because Mr. Banks received a valid consideration in Mr. Gladney's services as his attorney in the criminal case. He also found that plaintiffs failed to prove any fraud on the part of Mr. Gladney and Mr. Johns. He was unable to find from the evidence that Mr. Banks was mentally incompetent at the time the act of sale was passed. However, he found that Mr. Banks did not have contractual capacity at the time of the sale, and the sale was therefore voidable for want of consent. He was of the opinion he could not rescind the sale, but fixed his award so as to make the parties whole. He found the net value of the lots at the time of the sale to be $9,700.00 and awarded plaintiffs $7,200.00 damages, the difference between $9,700.00 and $2,500.00 that Mr. Gladney paid.
We agree with the district judge that the evidence does not support the contention that either the sale to Gladney or the subsequent sale to Johns was a simulation. The record is clear that consideration passed in each sale. Nor is there any evidence to support the contention that Mr. Gladney acted as agent or as an interposed party for Mr. Johns. The record supports the conclusion that the act of sale to Mr. Gladney was passed before Mr. Johns was contacted.
Alternatively, plaintiffs contend that Mr. Banks was mentally incompetent at the time of the sale to Mr. Gladney. On November 24, Mr. Banks shot his wife. On November 27, he executed the sale to Mr. Gladney. On November 28, he was admitted to East Louisiana State Hospital, with a diagnosis of chronic brain syndrome associated with cerebral arteriosclerosis, with *197 psychotic episode, and diabetes mellitus. He was released on January 17, 1968, with a final diagnosis of chronic brain syndrome with psychosis in remission and diabetes mellitus severe. The only psychotic episode described by the witnesses was the shooting of his wife.
Dr. Ward, who admitted Mr. Banks to the hospital, and who made the first diagnosis, testified that he was of the opinion that Mr. Banks knew what he was doing when he went to Mr. Gladney's office on November 27. He further testified that Mr. Banks showed no signs of psychosis when he was admitted to the hospital although he appeared depressed. Dr. Butterworth, a psychiatrist at the hospital, would not venture an opinion as to Mr. Banks' mental condition at that time.
Mr. Johns and Mr. Gladney both testified that there was nothing unusual in Mr. Banks' behavior on the 27th. Mrs. Gladney, who worked in Mr. Gladney's office, gave the same testimony. Cecil Bankston, the notary who passed the sale to Mr. Gladney, and who had known Ben Banks, Sr. before that time, testified that he seemed to have understood what was going on, after having the sale read and explained to him, and that Mr. Banks did not look any different than he had on prior occasions.
On the evening of November 27, after the sales had been executed, Mr. Gladney took Mr. Banks to see his wife, to apologize. Mrs. Banks, and two of their children who were there, testified that his eyes were glazed, that he looked wild, that he kept saying the same thing over and over, and that, at one point, he put two hats on his head.
The law applicable to rescission of a sale for mental incompetency or insanity is found in Articles 403 and 1788 of the Civil Code. As they apply to this case, these articles provide that, after the death of a party to a contract, his mental incompetence cannot be urged as a ground for rescission of the contract unless he was interdicted prior to his death, or the contract was executed within 30 days of his death, or his mental condition manifested itself within 10 days before his death. None of these conditions exist in this case. The act of sale to Mr. Gladney is entirely regular on its face, and cannot form the basis for excusing the lack of an interdiction because the instrument complained of contains evidence of the insanity of the party, under Article 1788(6).
Article 1789 of the Civil Code provides as follows:
"A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent."
Since the medical evidence indicates that Mr. Banks was suffering from a disease (chronic brain syndrome) which might result in psychotic episodes (shooting his wife), it would seem that this article would be peculiarly applicable. However, the evidence in this case does not preponderate to the effect that "the situation of the party and his incapacity were apparent." If anything, the evidence tends to show that Ben Banks, Sr. understood what he was doing, and appeared to be normal in his manner on November 27th, when the sale was passed.
Plaintiffs' alternative plea of lesion beyond moiety is based on the contention that the lots in question were, on November 27, 1967, worth more than twice the consideration given for them by Mr. Gladney. We need not consider whether the consideration given for the lots was lesionary, because Mr. Gladney sold the lots to Mr. Johns three days later for the same price he paid. It is settled that the vendor in a lesionary sale is not entitled to its rescission if the property has since been conveyed to a third party. Article 2591, Civil Code; O'Brien v. LeGette, 254 La. 252, *198 223 So.2d 165 (1969). The latter case, which is the last expression of the Supreme Court on the subject, so interprets the codal provisions as to allow the seller in a lesionary transaction to recover from the purchaser who has sold the property the profit which the purchaser has realized from the transaction. In this case, Mr. Gladney realized no profit, so there can be no recovery on this ground.
Finally, we must consider the basis on which the district judge decided the case. The rationale of his decision is as follows:
"This court feels that the totality of the circumstances definitely shows that Ben Banks, an illiterate, showing signs of physical and mental deficiencies, plus being anxious over his incarceration, with guilty knowledge that he had shot his wife, did not know what he was doing and should not have sold his property and did not have the contractual capacity to enter into the said relationship at the time he did so and the contract was voidable for want of consent. Civil Code Articles 1766, 1788. See Succession of Molaison (1948), 213 La. 378, 34 So.2d 897. In that case the Supreme Court in dealing with a case where all the parties had extensive business experience but the plaintiff had practically none and in view of all the facts and the hasty manner and the circumstances prevailing at the time that the instrument was executed, laid down the following test:
`Where parties of somewhat equal experience and mental capacity entered into an engagement the courts are reluctant to disturb it unless there is fraud. However, it is the duty of the court to carefully and painstakingly investigate the circumstances surrounding the transactions between a person of limited mental capacity and one experienced in business affairs, in order that a substantial justice might be metered out.'"
He found that knowledge of Mr. Banks' condition had to be imputed to Mr. Gladney.
We cannot agree with his finding. Under Article 1782 of the Civil Code, a party to a contract is capable unless he specifically comes within one of the exceptions provided by law. The trial judge found as a fact, and we agree, that the record would not support a finding that Mr. Banks was mentally incompetent when the sale was passed, and this is the only ground for incapacity alleged. The sale cannot be rescinded on this ground. None of the vices of consent have been alleged except for fraud, which the trial judge properly found not to be supported by the record.
Succession of Molaison, 213 La. 378, 34 So.2d 897 (1948) relied on by the trial judge, deals with a suit between living parties to an act renouncing a succession. The court cites no authority for the principle of law on which it relied in setting aside the act. We think that the case, which stands alone in our jurisprudence, and which has never been cited as authority, is factually inapposite to the instant case, and should be, in any event, restricted to its facts.
The judgment appealed from is therefore reversed, and there will be judgment in favor of defendants, dismissing plaintiffs' demand, at their cost.
Reversed and rendered.