438 So.2d 688 (1983)
Jo Ann Rae Quattlebaum SOBBERRI, et al., Plaintiffs-Appellants,
v.
Helen Marie COOKSTON, Defendant-Appellee.
No. 15631-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
Writ Denied November 28, 1983.
Culpepper, Teat & Caldwell by James D. Caldwell, Jonesboro, for plaintiffs-appellants.
Douglas H. Allen, Winnfield, for defendant-appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and NORRIS, JJ.
JASPER E. JONES, Judge.
Appellants brought this action to annul the sale by their father, C.B. Quattlebaum, of his undivided 3/8 interest in a tract of land located in Winn Parish for the reason *689 that he was insane at the time of the sale.[1] Appellants appeal the trial court's judgment rejecting their demands. We affirm.
Mr. Quattlebaum sold his interest in the land on January 3, 1941, to defendant's father, W.C. Cookston. Appellants allege they are entitled to have the sale set aside because their father lacked the mental capacity to contract at the time he executed the sale. To support this claim, appellants introduced into evidence a certified copy of a commitment proceeding instituted in 1936 against their father at his residence in Angelina County, Texas, wherein he was found by a jury to be insane and in need of restraint. There was no direct evidence relating to Mr. Quattlebaum's mental capacity at the time he signed the deed.
The theory of appellants' case is that the Texas commitment proceeding is equivalent to a Louisiana interdiction. Because the commitment occurred before the sale, appellants claim the commitment should be conclusive evidence of their father's incapacity to contract under La.C.C. 1788.[2]
The trial judge found appellants' claim had prescribed and further found the Texas proceeding was not entitled to full faith and credit because it did not contain a signed judgment of interdiction.
The appellants assign as error these determinations made by the trial judge.
We agree the trial judge erred in deciding the case had prescribed. La.C.C.P. 927 provides the court cannot supply the objections of prescription and res judicata which must be specially plead. Defendant never filed a plea of prescription and the court had no right to supply it for her.
We find it unnecessary to determine whether the absence of a signed judgment in the Texas commitment proceeding deprived it of full faith and credit, under Art. 4, Sec. 1 of the U.S. Constitution, because we conclude the Texas proceeding is not analogous to the Louisiana interdiction proceeding.
Even if there was a signed judgment in the Texas commitment proceeding, this would not establish the invalidity of the deed. Appellants have introduced into these proceedings no evidence of any Texas law to prove the effect of the Texas commitment proceedings. They have not established that under the laws of the State of Texas the commitment proceeding had the effect of a Louisiana interdiction proceeding as provided for in C.C. 1788, supra. The conflict of law rule provides that in absence of proof to the contrary the law of another state is assumed to be the same as that of the forum. Succession of Gibson, 186 La. 723, 173 So. 185 (1937); Franks v. Louisiana Health Services & Indemnity Company, 382 So.2d 1064 (La.App.2d Cir.1980).
We therefore assume that the Texas law would give the same effect to a Texas judgment of commitment as Louisiana law gives to a Louisiana commitment proceeding. Louisiana law distinguishes commitment to a mental institution from interdiction. While the statutes providing for commitment have been updated over the years, the basic distinction remains the same. The difference between an interdiction and a commitment is set forth in the following quote in Vance v. Ellerbe, 150 La. 388, 90 So. 735 (1922), at 740:
"We find, therefore, that the law provided then, and has continued to do so until *690 the present day, two separate proceedings for dealing with persons of unsound mindthe one for the restraining and confining of insane persons for their own and the public's protection, which is ex parte and in the name of the state; and the other dealing with the civil and property rights of such persons. One is informal, and need not be set aside when the patient recovers; while the other is highly formal, and requires all of the solemnities of contested judicial proceedings, including a formal judgment to restore civil rights after the mental derangement has ended."
The defendant established in the lower court that the law of Texas, at least at the time of the proceeding here involved, provided for two separate proceedings analogous to Louisiana interdiction and the Louisiana commitment law. In the Texas decision of Clark v. State, 35 S.W.2d 488 (Tex. Civ.App.1931), the court described the two separate proceedings, to-wit:
"Our civil statutes provide for two lunacy proceedings; one in chapter 12 of title 69 (articles 4267-4284), the other in title 92 (articles 5547-5561). The style of title 69 is "Guardian and Ward"; the style of title 92 is "Lunacy-Judicial Proceedings in Cases of." The primary purpose of the lunacy proceedings, authorized by chapter 12 of title 69, is for the appointment of a guardian for the person and estate of an alleged lunatic. Articles 4267 and 4272, R.S. 1925. Such case shall be docketed in the name of the county, as plaintiff, and in the name of the alleged lunatic, as defendant. The state of Texas is not a party to such a cause of action, and neither is the state, or society at large, primarily concerned in such a cause
A different purpose is manifested by the insanity proceedings authorized under title 92. The case is docketed in the name of the state of Texas, as plaintiff, and in the name of the alleged lunatic, as defendant. Article 5550. The primary purpose of the proceedings under title 92 is to determine whether the alleged lunatic should be confined because of his danger to, and the safety of, society." Clark v. State, supra, at 491.
A comparison of the language of the Clark opinion with that of Vance shows that the Texas proceedings under title 92 are analogous to Louisiana commitment. Those under title 69 more closely equal interdiction under the civil code. The proceedings against Mr. Quattlebaum were brought under title 92.[3]
Though the defendant established the existence of the two Texas procedures, she, as well as the appellants, failed to establish the effect of the Texas commitment under Texas law, and for this reason we are relegated to the application of the Louisiana law as to the effect of the Texas commitment. In Louisiana a commitment produces none of the civil effects of interdiction under the civil code. Nash v. Bowden, 178 La. 602, 152 So. 305 (1934). In our present mental health law (La.R.S. 28:1 et seq), we find the jurisprudential rules on the effect of commitment reflected in Vance v. Ellerbe and Nash v. Bowden, stated in 28:171(a)(b). It is there provided that commitment for mental illness shall not affect the party's right to enter into contracts and that involuntary commitment does not create a presumption that the person is incompetent.
The applicants seek to use the Texas commitment proceeding as conclusive evidence of their father's incapacity to contract. These proceedings do not have this legal effect under Louisiana law, because under our law a commitment has none of *691 the effects of interdiction under the civil code and cannot be given the effect of an interdiction judgment which provides conclusive evidence of incapacity to contract under La.C.C. 1788.
Appellants have offered no proof that their father was insane in 1941 when he signed the deed, however, even if they had established his insanity at that time they would not have established a cause of action for the following reasons:
If a party to a contract dies more than 30 days after the contract is executed, and no interdiction proceedings have been instituted against him, the contract may not be contested on the grounds of insanity unless the mental condition first became apparent within 10 days before his death. La.C.C. 403, 1788(5). Banks v. Johns, 289 So.2d 194 (La.App. 1st Cir.1973). These rules do not apply to a contract which itself contains evidence of the insanity of the party to the act whose competence is the subject of the attack. C.C. 1788(5). There was no interdiction proceeding instituted against Mr. Quattlebaum and the deed was executed many years before his death. The evidence of his insanity manifested itself many years before his death. The deed contained no evidence of insanity. Under these circumstances the appellants had no cause of action to void the deed on the basis of insanity.
For these reasons we AFFIRM the judgment rejecting appellants' demands at their costs.
NOTES
[1] C.B. Quattlebaum died in 1973. Appellants bring this action as his heirs.
[2] The portions of C.C. 1788 relevant to appellants' claim provide:

"The contract, entered into by a person of insane mind, is void as to him for the want of that consent, which none but persons in possession of their mental faculties can give. It is not the judgment of interdiction, therefore, that creates the incapacity; it is evidence only of its existence, but it is conclusive evidence, and from these principles result the following rules:
1. That, after the interdiction, no other evidence than the interdiction itself is necessary to prove the incapacity of the person, and to invalidate any contract he may have made after the day the petition for interdiction was presented, and that no evidence to show that the act was made during a lucid interval, or to contradict the judgment of interdiction, can be admitted."
[3] The record of these proceedings introduced into evidence does not name the statute under which they were brought. We arrive at this conclusion from the title of the proceeding, Complaint in Lunacy No. 568, and from the fact that the interrogatories presented to the jury for their special verdict were taken from article 5552 of title 92. We further noted that the case was styled "The State of Texas v. C.B. Quattlebaum." The factors here observed are among those described in the Texas case of Clark v. State, supra, as indicating a Texas commitment action rather than an action in Texas analogous to our interdiction proceedings.